| iPETERS, Judge.
This appeal arises from an attempt by John Paul Landry, the husband of Danielle Gale Trahan Landry, to adopt Mrs. Landry’s minor child, E.A.T. John Ray Trahan, the natural father, opposed the intrafamily adoption, and after a hearing, the trial court issued a final decree allowing the proposed adoption. Mr. Trahan has appealed.
DISCUSSION OF THE RECORD
On September 28,1985, Danielle Gale Tra-han Landry, at the age of sixteen, gave birth to E.A.T. At age fifteen, she had become pregnant as a result of a relationship with John Ray Trahan, who at the time of conception, was sixteen years old. Their relationship initially dissolved in January of 1985, and Mr. Trahan was not even aware that Mrs. Landry had become pregnant until July before the birth in September. Mrs. Landry resided with her mother and stepfather, Mildred and John Broussard,[1] at the time of E.A.T.’s birth. On October 5, 1985, Mrs. Broussard 12obtained a court order giving her legal custody of the child “for insurance purposes.” [2]
After E.A.T.’s birth, Mr. Trahan and Mrs. Landry renewed their relationship and decided to marry. However, the February 1986 wedding date was canceled by Mr. Trahan. The relationship between the couple was then terminated permanently. At trial, Mr. Trahan testified that he canceled the wedding and terminated the relationship because Mrs. Broussard informed him that she would not relinquish custody of the minor child if they married — a comment which Mrs. Brous-sard denies making.
Mrs. Landry, with the help of her mother, has retained the physical custody of E.A.T. continuously since her birth. Mrs. Landry paid the expenses of the birth, and since the *1094 termination of their relationship, Mr. Trahan has not provided Mrs. Landry with any financial support for E.A.T. Mrs. Landry testified that Mr. Trahan never requested to see his child, and that neither she nor her family did anything to keep him from doing so. She testified that the only time Mr. Trahan communicated with her concerning the child was in 1995 when he telephoned Mrs. Landry to obtain E.A.T.’s social security number. Mrs. Landry testified that Mr. Trahan told her he needed the social security number so that a savings account could be opened for E.A.T. When she informed him that she would call the bank and give the appropriate official the number, he hung up on her.
Mr. Trahan testified that he did offer to make support payments and did, on three occasions, try to visit E.A.T. but that his offer was refused and that his requests for visits were rejected by Mrs. Landry and her mother. Mrs. Landry and Mrs. Broussard denied that he ever asked to visit E.A.T. His reason for not pursuing his rights injjregard to visitation was that he had been informed by an attorney that without a blood test to establish paternity, he had no visitation rights. He did not explain why he did not attempt to obtain the blood test. The trial court concluded in its reasons for judgment that Mrs. Landry’s testimony on these issues was “more credible” than Mr. Trahan’s.
In August of 1992, Mrs. Landry married her current husband, John Paul Landry. Since 1992, they have maintained the custody of E.A.T, and have taken care of all her needs. Mrs. Landry learned soon after E.A.T.’s birth that the child was hearing impaired, and she has had to learn sign language to communicate with her. Mr. Landry has taken sign language classes for over two years in order to better communicate with his stepdaughter.
John Paul Landry and Danielle Gale Tra-han Landry jointly petitioned the court for Mr. Landry to adopt E.A.T., and after receiving service of the petition, Mr. Trahan filed an opposition to the proposed adoption. After a hearing on Mr. Trahan’s opposition, the trial court issued written reasons for judgment, wherein it concluded that Mr. Tra-han’s consent was not required for the adoption by Mr. Landry because Mr. Trahan had not communicated with E.A.T. without just cause for a period in excess of two years. It further concluded that the adoption was in the best interest of E.A.T. On April 9, 1997, the trial court issued a final decree allowing the intrafamily adoption.
In this appeal, Mr. Trahan asserts that the trial court erred in concluding that Mrs. Landry was lawfully exercising actual custody of E.A.T.; that the trial court erred in concluding that Mr. Trahan was without just cause in failing to visit or communicate with his daughter; and that the trial court erred in concluding that the adoption was in the best interest of E.A.T.
UOPINION
We recognize three types of adoption of minor children in Louisiana: agency adoption, private adoption, and intrafamily adoption. La.Ch.Code art. 1170. Each type of adoption, while having certain aspects in common, are governed by different Articles of the Louisiana Children’s Code.[3] The matter before us is an intrafamily adoption. The trial court relied on La.Ch.Code art. 1245(D)(2) in finding that Mr. Trahan’s permission was not required for the adoption. That provision reads as follows:
D. When a parent lawfully exercising actual custody of the child is married to a stepparent petitioner and either of the following conditions exist:
(2) The other parent has refused or failed to visit, communicate, or attempt to communicate with the child without just cause for a period of two years.
While we agree that Mr. Trahan’s consent is not necessary to this adoption, we do not find that La.Ch.Code art. 1245(D)(2) is applicable. Each of these types of adoption recognized by Louisiana are governed by different procedural rules, but the issue of parental consent is applicable to all three types. La. Ch.Code art. 1193. That article reads in pertinent part as follows:
*1095 Unless rights have been terminated in accordance with Title X or XI, consent to the adoption of a child or relinquishment of parental rights shall be required of the following:
(1) The mother of the child.
(2) The father of the child, regardless of the child’s actual paternity, if any of the following ap-ply:
(a) The child is legitimate in accordance with Article 179 or Article 198 of the Louisiana Civil Code or their legal equivalents in another state.
(b) The father has executed a legitimation by authentic act as authorized by Article 200 of the Louisiana Civil Code or its legal equivalent in another state and has further recorded the act of legitimation in the parish of the child’s birth or on the child’s birth certificate.
[5(c) The father is presumed to be the father of the child in accordance with Articles 184 through 186 of the Louisiana Civil Code or their legal equivalents in another state.
(3) The alleged father of the child who has established his parental rights in accordance with Chapter 10 of Title XI.
(4) The biological father of the child whose paternity has been determined by a judgment of filiation in accordance with Civil Code Article 209 and who has established his parental rights in accordance with Chapter 10 of Title XI.
La.Ch.Code art. 1193(l)-(4) (emphasis added).
Under the requirements of this provision, Mr. Trahan is not one of those fathers whose consent is required for an adoption, and therefore, the more specific consent provisions of La.Ch.Code art. 1245 are not applicable in this fact situation. Having reached this conclusion, we also conclude that Mr. Trahan’s assertion that the trial court erred in concluding that Mr. Trahan was without just cause in failing to visit or communicate with his daughter for a period in excess of two years is without merit since his consent is not necessary.
Still, fathers of illegitimate children whose consent is not otherwise required are entitled to “notice of the mother’s ... consent to adoption and to an opportunity to oppose the proposed adoption.” La.Ch.Code art. 1193 — Official Comment (1993). Thus, not only may Mr. Trahan argue that the adoption is not in the best interest of his daughter, but he can also raise all procedural defects in the proceedings.
In the present ease, Mr. Trahan asserts as his first assignment of error that Mrs. Landry is not “lawfully exercising actual custody of [E.AT.]” as required by La.Ch. Code art. 1245 because of the custody decree of October 5,1985, awarding custody to Mrs. Broussard.[4] While we have concluded that La.Ch.Code art. 1245 is |6not applicable on the consent issue, we do find it instructive in determining the proper parties in an intra-family adoption. La.Ch.Code art. 1245 addresses the issue of consent in one other situation, wherein a stepparent is seeking adoption of a child of his or her spouse:
C. When a parent is married to a stepparent petitioner and both of the following conditions exist:
(1) The parent married to the stepparent petitioner has been granted sole or joint custody of the child by a court of competent jurisdiction.
(2) The noncustodial parent is a nonresident of this state and has failed to support the child for a period of one year after the judgment awarding custody.
La.Ch.Code art. 1245(C) (emphasis added).
Thus, where a stepparent attempts to adopt his or her spouse’s child in an intra-family procedure, it is in the context either of the spouse having a judgment awarding custody or of the spouse “lawfully exercising actual custody.”
We agree with both parties that there is no jurisprudence interpreting the language *1096 “lawfully exercising actual custody.” This language is clearly ambiguous, and adoption statutes must be interpreted strictly in accordance with statutory requirements. In re Ackenhausen, 244 La. 730, 154 So.2d 380 (1963); Adoption of Edwards, 369 So.2d 210 (La.App. 3 Cir.1979). The Comments to La. Ch.Code art. 1245 appear to have a typographical error in them in that they state in part that:
b. Paragraph B, together with the provisions of Paragraph C, provide for stepparent adoptions when the stepparent has legal custody of the child.
e. Paragraph C expands the former provisions to allow parents who are legally exercising physical, actual custody of a child to utilize these proceedings without the necessity of first procuring a custody order. The purpose of this Paragraph is to provide a mechanism in an intrafamily adoption akin to an abandonment action, which is no longer available as a private action under Title X of this Code. It further recognizes that, for a variety of reasons, parents may not have sought a court order confirming their legal custody of the child. This is frequently the ease when a child is presumed to be born of a marriage that was ^dissolved by divorce prior to the birth of the child. Likewise, the parents of a child bom out of wedlock may not litigate custody of the child. Insofar as a biological father has a right to consent to an adoption pursuant to Article 1193, his right may be dispensed with under the provisions of this article.
(emphasis added).
Actually, La.Ch.Code art. 1245(B) provides for grandparent adoptions and not stepparent adoptions. La.Ch.Code art. 1245(C) and (D) apply to stepparent adoptions, and it is obvious that those paragraphs are being referred to in the Comments rather than (B) and (C) of the Article.
We conclude that the intrafamily adoption procedure of the Louisiana Children’s Code applies to situations where either the parent married to the stepparent seeking to ádopt had a judgment awarding custody or where no judicial custody award has been made and the parent has actual custody by virtue of his or her capacity as parent. Had Mrs. Broussard not obtained a custody order, Mrs. Landry would have been “lawfully exercising actual custody” as contemplated by La.Ch.Code art. 1245(D). However, that custody order existed at the time the petition was filed and there is no evidence that Mr. Trahan was made a party to the purported transfer back to Mrs. Landry the day before the trial on the adoption. Using a strict construction, this court interprets a “parent lawfully exercising actual custody” to mean the parent who has actual, physical custody of the child where no custody decree exists. Thus, we find that this assignment of error has merit, and we reverse the judgment of the trial court.
Because we find a procedural flaw in the entire adoption process and reverse on the basis of that flaw, we need not address Mr. Trahan’s assertion that the trial court erred in concluding that the proposed adoption is in the child’s best interest.
DISPOSITION
For the foregoing reasons, the decision of the trial court is reversed and the | ¿judgment of adoption is set aside. Costs of this appeal are taxed against John Paul Landry and Danielle Gale Trahan Landry.
REVERSED.

. Mrs. Landry's maiden name is Trahan. Her father died in 1981, and her mother then married John Broussard.

. While the record does not contain any documentation concerning the custody award, the parties do not dispute that Mrs. Landry’s mother did obtain an order of legal custody of the minor child, and that legal custody was not transferred back to Mrs. Landry until the day before the adoption hearing.

. Agency adoptions are governed by La.Ch.Code art. 1198 et seq.; private adoptions by La.Ch. Code art. 1221 et seq.; and intrafamily adoptions by La.Ch.Code art. 1243 et seq.

. Both Mrs. Landry and Mrs. Broussard acknowledged the custody transfer of 1985 but Mrs. Broussard testified that, the day before the adoption hearing, she transferred custody of E.A.T. back to Mrs. Landry. However, the record contains no evidence of either custody transfer, and there is no evidence that Mr. Trahan was a party to these proceedings.