815 So.2d 7 (2002)
Jean BOUDREAUX, et al.
v.
The STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2001-C-1329.
Supreme Court of Louisiana.
February 26, 2002.
Rehearing Denied May 24, 2002.
*8 Richard P. Ieyoub, Attorney General, Taylor, Porter, Brooks & Phillips, W. Luther Wilson, Harry J. "Skip" Phillips, John S. Campbell, Jr., Special Assistant Attorneys General, Baton Rouge, for Applicant.
Byard Edwards, Jr., Ponchatoula, Scandurro & Layrisson, Jean-Paul Layrisson, Timothy D. Scandurro, Stephen O. Scandurro, New Orleans, Andrew M. Edwards, II, Ponchatoula, Guglielmo, Marks, Schutte, Terhoeve & Love, Henry G. Terhoeve, Baton Rouge, for Respondent.
Charles S. McCowan, Jr., Donna Vandever Yelverton, Baton Rouge, for Amicus Curiae.
PER CURIAM.[*]
This per curiam addresses whether relator, the State of Louisiana Department of Transportation and Development (DOTD), abandoned its claims of alleged errors originally advanced in its writ application to this Court, when it urges different errors in its brief, after we granted a writ of certiorari. Finding all but one of the errors alleged in the writ application not briefed, we find those errors abandoned because they were not argued in brief for oral argument. We further find that in order to reach the merits urged in relator's brief after certiorari was granted, we would have to address questions that were neither presented in the application for certiorari nor fairly included in the questions that were presented. Accordingly, we dismiss our writ of certiorari.
In its writ application to this Court on May 4, 2001, DOTD urged three writ grant considerations: (1) the claims of the class members were prescribed pursuant to LA. REV.STAT. ANN. § 9:5624; (2) the trial court erred when it refused to allow DOTD to present certain evidence and the appellate court erroneously found that DOTD failed to proffer evidence on this issue; and (3) the trial and appellate courts erred when they failed to retroactively apply LA. CIV.CODE ANN. art. 667, as amended in 1996.
Now DOTD makes numerous other arguments before this Court, and only argues one of the previously urged writ grant contentions, namely the lower courts' failure to retroactively apply LA. *9 CIV.CODE ANN. art. 667, as amended in 1996.[1] In addition, for the first time DOTD filed in this Court the declinatory exception of lack of subject matter jurisdiction over the non-inverse expropriation claims.[2]
Except for the declinatory exception of lack of subject matter jurisdiction and the peremptory exceptions, two of which, prescription and res judicata, must be specially pleaded,[3] we cannot consider contentions raised for the first time in this Court which were not pleaded in the court below and which the district court has not addressed. Krauss Co. v. Develle, 236 La. 1072, 110 So.2d 104, 105-06 (1959); Weingart v. Delgado, 204 La. 752, 16 So.2d 254, 256 (1943); Gaines v. Crichton, 187 La. 345, 174 So. 666, 668 (1937); Succession of Quinn, 183 La. 727, 164 So. 781 (1935).
The Louisiana Supreme Court has general supervisory jurisdiction over all other courts. LA. CONST. ART. V, § 5(A).[4] The grant or denial of an application for supervisory writs rests within the sound judicial discretion of this Court. LA. SUP. CT. R. X, § (1)(a).[5] Although this Court has broad authority to exercise its general supervisory jurisdiction, we carefully screen writ applications under the criteria detailed in LA. SUP.CT. R. X, § 1(a).[6] As *10 directed in LA. SUP.CT. R. X, § 1(b), "[t]he application for writs shall address, in concise fashion, why the case is appropriate for review under the considerations stated in subsection (a) above." (Emphasis added). As further provided in civil cases, LA. SUP.CT. R. X, § 3(3) requires the applicant to submit assignments of error and "[a]n argument of each assignment of error on the facts and law, addressing particularly why the case is appropriate for review under the considerations stated in Section 1(a) of this rule." (Emphasis added). This procedure provides a standard to aid us in the exercise of our discretionary authority.[7] In the present case, DOTD, with the exception of its argument about the retroactive application of LA. CIV.CODE ANN. art. 667, chose not to argue in it its brief filed in anticipation of oral argument the two other issues it addressed in its memorandum in support of its writ application.
Even if LA. CIV.CODE ANN. art. 667 is applicable (the trial court relied upon LA. CIV.CODE ANN. arts. 655 and 656, the codal articles relevant to the servitude of drain, and DOTD did not raise Article 667 as an issue on appeal), all of the appellate courts that have addressed the 1996 amendments to LA. CIV.CODE ANN. art. 667 have concluded that the changes were substantive and subject to prospective application only. Carr v. Oake Tree Apartments, 34,539 (La.App. 2 Cir. 5/9/01), 786 So.2d 230; Hunter v. Town of Sibley, 32,075 (La.App. 2 Cir. 10/29/99), 745 So.2d 820, writ denied, 99-3351 (La.2/18/00), 754 So.2d 965; Mossy Motors, Inc. v. Sewerage & Water Bd. of the City of New Orleans, 98-0495 (La.App. 4 Cir. 5/12/99), 753 So.2d 269, writ denied, 99-2102 (La.10/29/99), 749 So.2d 638; Jackson v. Beasley, 30,359 (La.App. 2 Cir. 4/8/98), 712 So.2d 162; Small v. Baloise Ins. Co., 96-2484 (La.App. 4 Cir. 3/18/98), 753 So.2d 234. Even in its brief now before us, DOTD fails to cite any Louisiana cases that have sanctioned the retroactive application of LA. CIV.CODE ANN. art. 667. Accordingly, we find no merit to DOTD's contention in this regard.
Even though this Court does not have a specific court rule to address abandonment of an assignment of error as do the appellate courts of this state,[8] we find it within our authority to effect the same result. It is axiomatic that our rules are fashioned to assist us in the exercise of our discretionary jurisdiction. It is for that reason that we promulgated rules that mandate assignments of error in the application for writs and a memorandum which addresses with particularity the reasons why we should exercise our discretionary jurisdiction. This procedure allows for the best use of our judicial function in developing Louisiana jurisprudence. Correlatively, if this Court is to sharpen the focus on those issues most worthy of consideration and hasten the decisional process, it *11 is imperative that we not be blind sided after we grant a writ application[9] with questions which did not appear in the application for a writ of certiorari.[10] Accordingly, we find that DOTD has abandoned the prescription argument and its argument as to the lower courts' erroneous evidentiary rulings it made in its application for writ of certiorari because it chose not to brief these issues for oral argument. Furthermore, we find the additional questions briefed for oral argument, but not contained in the original writ application, are not properly before us. Therefore, we dismiss our writ of certiorari.
Notwithstanding our dismissal, DOTD has further filed a declinatory exception in this Court, urging that the Louisiana courts do not have subject matter jurisdiction over the non-inverse expropriation claims.[11] See n. 2, supra, recognizing that under LA. CODE CIV.PROC. ANN. art. 925(C) the lack of subject matter jurisdiction is not waived if not pleaded in the trial court. We now turn our attention to that assertion.
DOTD, asserting an exception to the Federal Tort Claims Act, 28 U.S.C. § 2674,[12] contends that it was a contractor who merely followed the federal government's plans and specifications for the construction of Interstate 12. Citing several federal appellate cases, it contends that the government's selection of a design or *12 approval of a design is a discretionary function to which immunity attaches.[13] As such, DOTD argues that it was entitled to share in the federal government's privilege of immunity established in 28 U.S.C. § 2680.[14] Relying on Mundy v. United States, 983 F.2d 950 (9th Cir.Cal.1993),[15] DOTD asserts that the proper procedural vehicle to raise the government contract defense is to contest the trial court's subject matter jurisdiction to hear the case.[16]
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. LA. CODE CIV. PROC. ANN. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. LA.CODE CIV. PROC. ANN. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived; a judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void.[17] LA.CODE CIV. PROC. *13 ANN. arts. 3 and 925. See also Whittenberg v. Whittenberg, 97-1424 (La.App. 1 Cir. 4/8/98), 710 So.2d 1157, 1158; Johnson v. Vinson Guard Service, Inc., 577 So.2d 56, 58 (La.App. 1 Cir.1990), writ denied, 578 So.2d 915 (La.1991). The issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Whittenberg, 710 So.2d at 1158; Tran v. Schwegmann's Giant Super Market, 609 So.2d 887, 889 (La.App. 4 Cir.1992). See also Gravois v. Travelers Indem. Co., 173 So.2d 550, 553 (La.App. 1 Cir.), writ denied, 247 La. 1016, 175 So.2d 301 (1965). Moreover, it is the duty of a court to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. Renno v. Evans, 580 So.2d 945, 947 (La.App. 2 Cir.1991).
Irrespective of the proper procedural vehicle to raise the question presented herein (see n. 14, supra), we find that DOTD fails to establish that it was a federal government contractor. DOTD was not making a product that the federal government owned or would own. Compare Yearsley v. Ross Constr. Co., 309 U.S. 18, 60 S.Ct. 413, 84 L.Ed. 554 (1940) (contractor performing work on Missouri River dikes owned by the federal government); Ramey v. Martin-Baker Aircraft Co., 874 F.2d 946 (4th Cir.1989) (contractor who manufactured an ejection seat on military aircraft as per specifications provided by the United States government). To the contrary, in the present case the State selected the highway routing and purchased, expropriated, and acquired title to the property on which Interstate 12 traverses. Moreover, although the federal government shared data with the State and reserved oversight approval of the State's selection of plans to protect its ninety percent funding of the costs, at all times the State was the owner of the interstate and remained primarily responsible for its operation. See Daye v. Commonwealth of Pennsylvania, 483 F.2d 294 (3rd Cir.1973);[18]Mahler v. United States, 306 F.2d 713 (3rd Cir.1962) (holding that Congress's concern was to make sure that federal funds were effectively employed and not wasted).
Under the facts of the present case, it is clear that Louisiana's courts of general jurisdiction have subject matter jurisdiction over the present matter. Accordingly, we find no merit in DOTD's declinatory exception of lack of subject matter jurisdiction. Therefore, we deny DOTD's declinatory exception of lack of subject matter jurisdiction.

DECREE
For the foregoing reasons, we dismiss our writ of certiorari and deny DOTD's declinatory exception of lack of subject *14 matter jurisdiction. This matter is remanded to the trial court for determination of damages.
WRIT OF CERTIORARI DISMISSED. DECLINATORY EXCEPTION DENIED. CASE REMANDED TO THE DISTRICT COURT FOR THE DETERMINATION OF DAMAGES.
JOHNSON and VICTORY, JJ., concur.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.
[1] See infra for our summary disposition of this question.
[2] As provided in LA. CODE CIV.PROC. ANN. art. 925(C), "All objections which may be raised through the declinatory exception, except the court's lack of jurisdiction over the subject matter of the action, are waived unless pleaded therein." (Emphasis added).
[3] As provided in LA.CODE CIV. PROC. ANN. art. 927(B), "[t]he court cannot supply the objections of prescription and res judicata, which must be specially pleaded. The nonjoinder of a party, or the failure to disclose a cause of action or a right or interest in the plaintiff to institute the suit, may be noticed by either the trial or appellate court of its own motion."
[4] Contrary to the state's current constitution, in 1812, the first Louisiana constitution limited the state supreme court to appellate jurisdiction. LA. CONST. of 1812, art. 4, § 2. It was not until the constitution of 1879 that this Court was granted supervisory jurisdiction. See Jerry A. Brown, Supervisory Powers of the Supreme Court of Louisiana over Inferior Courts, 36 TUL. L.REV. 165, 168 (1960). At that time, LA. CONST. of 1879, art. 90 was added, providing that:

The Supreme Court shall have control and general supervision over all inferior courts. They shall have power to issue writs of certiorari, prohibition, mandamus, quo warranto, and other remedial writs.
Subsequent state constitutions have contained similar provisions.
[5] "The simplest scheme [as to how the state's appellate work is to be routed] is to provide that all appeals from the trial courts go to the intermediate court, with the supreme court receiving no appeals directly from the trial level. The supreme court's jurisdiction is limited to reviewing the intermediate court's decisions on a discretionary basis ... The theory of this arrangement is that every litigant is entitled to one appellate review of a trial court's judgment on the merits, and that review is to be provided by the intermediate court. But, so the theory goes, a litigant is not entitled as a matter of right to two appeals; any further review after the first appeal should be provided only in the interest of the law and the legal system. Thus the supreme court is given discretion to determine what cases, among the large number in which petitions are filed, deserve its attention in its institutional law-developing role, leaving the bulk of appeals to the error-correcting function of the intermediate court." DANIEL JOHN MEADOR, AMERICAN COURTS 15-16 (1991).
[6] The ABA STANDARDS RELATING TO APPELLATE COURTS state that "review by a supreme court should be available only after review has been had before an intermediate appellate court, and then only if the supreme court determines that such review is warranted in a specific case ... An essential task for the highest court in a multi-level appellate system is the proper apportionment of its limited time and energy among cases that are eligible for its consideration ... The question involved in considering a petition for review is not whether a case is meritorious, or even whether it arguably might have been decided the other way, but whether it is more important for decision than other cases competing for the attention of the court." ABA STANDARDS RELATING TO APPELLATE COURTS § 3.10, 16-18 (1976).
[7] As further evidence of the importance of honing the argument, our Court rules encourage the filing of oppositions to writ applications. "Oppositions serve an important purpose in assisting the court in the exercise of its discretionary jurisdiction." LA. SUP.CT. R. X, § 6. See also Issac H. Ryan and J. Todd Benson, Get That Writ, Civil Writ Practice before the Louisiana Supreme Court, 48 LA. B.J. 83, 120-26 (2000).
[8] UNIFORM RULESLA. CT. OF APP. R. 2-12.4 provides, in pertinent part:

All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed.
[9] To exemplify the importance of this point, we call attention to LA. SUP.CT. R. X, § 7(a). In Rule 7(a), we specifically provide that when a writ has been granted, "[i]n lieu of filing a brief, the applicant may, within the time prescribed by Rule VII, Section 8(a), file additional copies of the application (with or without the supporting exhibits) and any memorandum or brief filed in support of the application." Thus, it is evident that we anticipate that the issues considered by us in deciding to exercise our discretion are those that were urged in the writ application and that these will form the basis for our consideration at oral argument.
[10] Notably, the rules of the United States Supreme Court recognize this policy. U.S. SUP.CT. R. 24.1(a) provides, in pertinent part:

The questions [presented for review under Rule 14.1] shall be set out on the first page ... The phrasing of the questions presented need not be identical with that in the petition for a writ of certiorari or the jurisdictional statement, but the brief may not raise additional questions or change the substance of the questions already presented in those documents. At its option, however, the Court may consider a plain error not among the questions presented but evident from the record and otherwise within its jurisdiction to decide.
Commenting on this rule, in Kaisha v. U.S. Philips Corp., 510 U.S. 27, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993), the Court stated:
Even before the first version of Rule 14.1(a) was adopted, we indicated our unwillingness to decide issues not presented in petitions for certiorari. As we stated in General Talking Pictures Corp. v. Western Elec. Co., 304 U.S. 175, 179[, 58 S.Ct. 849, 82 L.Ed. 1273] (1938): "One having obtained a writ of certiorari to review specified questions is not entitled here to obtain decision on any other issue." And as Justice Jackson stated ... in Irvine v. California, 347 U.S. 128, 129-130[, 74 S.Ct. 381, 98 L.Ed. 561] (1954): "We disapprove the practice of smuggling additional questions into a case after we grant certiorari. The issues here are fixed by the petition unless we limit the grant, as frequently we do to avoid settled, frivolous or state law questions."
Kaisha, 510 U.S. at 32, n. 6, 114 S.Ct. 425.
[11] Although we have now dismissed DOTD's writ of certiorari previously issued, it is clear that DOTD filed this declinatory exception with this Court after we granted a writ of certiorari Accordingly, we find that this declinatory exception remains extant and must be addressed.
[12] "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."
[13] Although the federal jurisprudence DOTD relies upon utilizes lack of subject matter jurisdiction as the exception to raise the immunity defense, see infra, it is clear in Louisiana that immunity is an affirmative defense that must be pleaded by a defendant or that defense is capable of being waived. Moresi v. State Through Dept. of Wildlife and Fisheries, 567 So.2d 1081, 1086 (La.1990). It is well settled that the defendant is required to set forth affirmatively in its answer any matter constituting an affirmative defense on which it will rely. LA.CODE CIV. PROC. ANN. art. 1005. Our careful review of the record shows that DOTD never pleaded the affirmative defense of government contractor immunity.
[14] "The provisions of [the Federal Tort Claims Act] ... shall not apply to(A) Any claim based upon an act or omission of an employee of the Government exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the direction involved be abused."
[15] "When a claim falls within a statutory exception to the FTCA's waiver of sovereign immunity, the court is without subject matter jurisdiction to hear the case. Broudy v. United States, 661 F.2d 125 (9th Cir.1981)." Mundy, 983 F.2d at 952.
[16] In making this assertion, DOTD emphasizes that it is neither asserting the sovereign immunity of Louisiana nor alleging federal preemption. Our review of the record shows that DOTD did file a peremptory exception of no right of action on March 1, 1999. In its exception, DOTD argued that the class action plaintiffs' state law claims based upon DOTD's design and construction of the Interstate Highway 12 were preempted under federal law. After referring a determination of this peremptory exception to the trial on the merits, the trial court denied the peremptory exception, stating that "the Federal Government has not pre-empted the Laws of the State of Louisiana relative to plaintiffs suing the State in State Court for damages caused by the construction of a highway, which was partially funded by federal funds." Boudreaux v. State of Louisiana, Dept. of Transportation & Dev., No.71-804 (21st J.D.C. May 28, 1999). DOTD did not assign the denial of its peremptory exception of no right of action as error in its appeal. Issues not raised by the appellant in the court of appeal are abandoned. See UNIFORM RULESLA. CT. OF APP. R. 2-12.4; Devers v. Southern University, 97-0259 (La.App. 1 Cir. 4/8/98), 712 So.2d 199, 207; White v. GMC, 99-2585 (La.App. 1 Cir.11/03/00), 775 So.2d 492, 503, n. 21. Accordingly, the trial court's denial of DOTD's peremptory exception of no right of action on the issue of preemption is not properly before us either.
[17] But see LA.CODE CIV. PROC. ANN. art. 2003 ("A defendant who voluntarily acquiesced in the judgment, or who was present in the parish at the time of its execution and did not attempt to enjoin its enforcement, may not annul the judgment [because it was rendered by a court which does not have jurisdiction over the subject matter of the suit]").
[18] "In accordance with the concepts of division of authority between the Federal Government and the States, the [Federal Aid Highway Act and the Highway Safety Act] reserved to the States the initiative in determining what roads were to be built, the character of their improvement in the preparation of plans and specifications, the acquisition of rights-of-way and the awarding of contractssubject to Federal approval. It placed immediate supervision of construction in the hands of the State highway departments, but provided for Federal review and approval. Thus, each level of government had its own responsibilities and authority, and a balanced partnership between the States and the Federal Government was initiated." Daye v. Commonwealth of Pennsylvania, 483 F.2d 294, at 298 (3rd Cir.1973) quoting 1966 U.S.Code Cong. and Adm. News, at 2801.