IN RE: A.A. APPLYING FOR INTRAFAMILY ADOPTION

NO. 23-CA-45

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. A-1045, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

May 24, 2023

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Jude G. Gravois, and Cornelius E. Regan, Pro Tempore

**JUDGMENT VACATED AS VOID**
    **FHW**
    **JGG**
    **CER**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PARENT/APPELLANT,
MOHANNAD ALKASAJY
    Miguel A. Elias
    Paula J. Ferreira
    Adam M. Klock
    Donald A. Mau

COUNSEL FOR PLAINTIFF/APPELLEE,
IBTISSAM SAMLAOUI AND AMIN THABATA
    Betsy A. Fischer
    Natalie N. Enterkin

**WICKER, J.**

This appeal arises from the trial court's granting of a petition for intrafamily adoption of A.A.[1] filed in the 29th Judicial District Court for St. Charles Parish by A.T. and I.S., the stepfather and biological mother of the minor child (collectively "petitioners"), pursuant to La. Ch.C. art. 1245. The record demonstrates that at the time the petition for intrafamily adoption was filed in the 29th Judicial District, ongoing custody litigation was already pending in the 24th Judicial District. On this Court's own motion, we find the St. Charles Parish trial court lacked subject matter jurisdiction to consider the adoption of A.A. pursuant to La. Ch.C. art. 1245 while custody litigation was pending in another Louisiana district court. Therefore, we vacate the trial court's November 10, 2022 judgment granting the intrafamily adoption of A.A.[2]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual background and procedural history giving rise to the instant appeal stems from proceedings that occurred in the 24th Judicial District Court ("Jefferson Parish proceedings") and the 29th Judicial District Court ("St. Charles Parish proceedings").

On September 23, 2017, I.S. and M.A. were married and together they have one child, A.A., who was born on August 1, 2019. A.A.'s parents separated in March 2020 or September 2020[3], and in January 2021, I.S. filed a petition for divorce, child custody, and protective order in the 24th Judicial District Court. The testimony

---

[1] Pursuant to Uniform Rules, Courts of Appeal, Rule 5–2, entitled Confidentiality:

To insure the confidentiality of a minor who is a party to or whose interests are the subject matter in the proceedings listed in Rule 5–1(a) or (c) above, initials shall be used in all filings and in opinions rendered by the court of appeal to protect the minor's identity.

Thus, to insure the privacy of the minor, only his initials and the initials of the parties involved will be used throughout this opinion.

[2] In that we find the trial court lacked subject matter jurisdiction, rendering the trial court's judgment void, we do not opine on the merits of the trial court's judgment granting the intrafamily adoption.

[3] The parties dispute the date of separation. I.S. claims the parties separated in March of 2020; however, according to testimony at the adoption hearing, the couple traveled to California together on a couple's trip in September 2020 for a week. M.A. contends that in September 2020, the parties separated.

reflects that after the couple separated, M.A. enjoyed regular visits with his son. M.A. testified that during the period of separation, he visited with his son four or five times a week and that the visits with his son were facilitated through I.S.'s father. On March 15, 2021, the petition for divorce was granted, and I.S. was granted temporary sole custody of A.A. "due to history of family violence" by M.A. According to M.A., all communication and visits with his son ceased after the divorce was granted in Jefferson Parish. M.A. testified that around the end of March 2021, he contacted I.S.'s father to arrange a visit with his son. M.A. testified that his ex-father-in-law responded by text message indicating that he would check with I.S. When M.A. followed up with I.S.'s father three hours later, I.S. responded from her father's phone that M.A. would need to "[g]o to court, if [he] want[ed] to see [his] son." M.A. testified that he tried again to schedule time to visit with his son in early April 2021, however, when he tried to contact his ex-father-in-law through text message on WhatsApp, he learned that his ex-father-in-law had blocked his telephone number.

On April 4, 2021, about two weeks after the petition for divorce was granted, I.S. married A.T. On April 29, 2021, the Jefferson Parish trial court issued a protective order in favor of I.S. against M.A., which prohibited M.A. from contacting I.S. directly or through a third party. At that point, the Jefferson Parish trial court also granted I.S. temporary custody of A.A., and pursuant to the protective order, M.A. was ordered not to interfere with the physical custody of the minor child.

On July 15, 2021, the Jefferson Parish trial court rendered a consent judgment, which ordered M.A. to pay $611 per month in child support. M.A. paid child support for August 2021 and October 2021. M.A. testified that subsequent attempts to pay child support by mailing checks to I.S. were unsuccessful as the checks were returned to him as undeliverable.[4]

---

[4] Testimony established that I.S. changed her domicile on multiple occasions between the granting of

M.A. testified that on A.A.'s second birthday, on August 1, 2021, he attempted to contact his son to wish him a happy birthday. Despite being blocked from communication by both the protective order and his ex-father-in-law's actions, he sent a text message to his ex-father-in-law, requesting to FaceTime with his son. Because he had been blocked from communication four months prior, M.A.'s ex-father-in-law did not receive the text message.

On March 11, 2022, in the Jefferson Parish proceedings, I.S. filed a motion for contempt, alleging M.A. had failed to meet his child support obligation. A contempt hearing was held on April 20, 2022. During the hearing, M.A. tendered a check to I.S. in the amount of $4,277.00, which accounted for the six months of child support payments that were past due, plus a timely child support payment for April 2022. Thereafter, M.A. paid monthly child support, every month, on time.

Prior to the April 20, 2022 contempt hearing, M.A. filed a motion to modify custody on April 13, 2022 in the Jefferson Parish proceedings. In his motion, he alleged that he had not seen A.A. since March 2021, when he had previously been accustomed to seeing him on a daily basis. His motion further requested that he and I.S. share physical and legal custody of A.A., with I.S. as the domiciliary parent, and that the parties share equal time and alternating holidays with A.A. A hearing on M.A.'s motion to modify custody was set for June 27, 2022.

After the Jefferson Parish trial court issued the April 29, 2021 protective order,

_____

divorce in March 2021 and the filing of the petition for intrafamily adoption in June 2022. M.A. mailed checks for child support to the address "on file," which testimony confirmed was the mailing address for I.S.'s parents in Kenner, Louisiana. I.S. testified that after she remarried in April 2021, she moved out of her parents' house and moved in with her husband A.T. When I.S. filed her March 2022 contempt motion against M.A. for child support, I.S. provided an address for an apartment in Metairie, Louisiana. At the April 2022 contempt hearing, it was agreed that all future payments would be sent to the mailing address for I.S.'s parents in Kenner, Louisiana. However, text messages, which were introduced at trial, between A.T. and M.A.'s brother demonstrate that by May 2022, I.S.'s parents had moved to Florida. The text messages also show that on May 16, 2022, A.A. was flying to Florida to stay with his grandparents for the rest of the month while his mother and step-father worked. Moreover, by June 25, 2022, when the petition for intrafamily adoption was filed, I.S. had moved to St. Charles Parish. Exhibits attached to the petition reflect a mailing address in Hahnville, Louisiana. M.A. testified that he was not made aware of any changes in I.S.'s domicile, nor does it appear in the record that I.S. informed the 24th Judicial District Court of any changes in her mailing address.

M.A. was able to see his son on two days, May 14, 2022 and May 15, 2022. M.A. testified that this visit was achieved because his mother was visiting from Jordan and wanted to see A.A., so a member of M.A.'s family contacted I.S. about the visitation. I.S. testified that she allowed A.A. to visit with M.A.'s family, but that she was unaware that M.A. would be there. I.S. testified that, had she known that M.A. would be present, she would not have allowed A.A. to attend the family gathering and to see M.A.'s mother.

Testimony established that given the opportunity, M.A. took advantage of it to spend time with his child. M.A. testified that he picked his son up from his brother's house, took A.A. to get a haircut, went to eat with him, bought him new clothes, gave him a shower, changed his diaper, and brought him back to his brother's house so that his mother could visit with A.A. M.A. testified that his entire family was present and spent the rest of the day together. The next day, M.A. took his son out to eat, then to the trampoline park with other members of M.A.'s family, and later M.A. took his son to the toy store and bought him toys. They spent the rest of the day together with the rest of M.A.'s family before his brother returned A.A. to I.S.

While the motion to modify custody in the Jefferson Parish proceedings was pending and two days before the custody hearing was set to take place, I.S. and her husband A.T., on June 25, 2022, filed a petition for intrafamily adoption in St. Charles Parish. Two days later, on June 27, 2022, I.S. failed to appear at the Jefferson Parish hearing on M.A.'s motion to modify custody, and she was held in contempt, and the matter was continued until August 4, 2022.

On August 1, 2022, in response to the petition for intrafamily adoption filed in the St. Charles Parish proceedings, M.A. filed an objection, answer, and exceptions of lis pendens, no cause of action, prematurity, and improper venue. At the August 4, 2022 custody hearing in the Jefferson Parish proceedings, the trial

judge continued the matter until September 26, 2022, after being informed that adoption proceedings had been initiated in St. Charles Parish.

On September 29, 2022, the parties appeared before the St. Charles Parish trial court to take up M.A.'s exceptions. The trial court overruled the exceptions, and M.A.'s objections were noted for the record. Thereafter, on October 3, 2022, M.A. filed a motion for visitation in the Jefferson Parish proceedings, which, like his motion to modify custody, was continued due to the adoption proceedings filed in St. Charles Parish.

On October 21, 2022, the St. Charles Parish trial court held a hearing on the petition for adoption. Following the presentation of testimony, the trial court requested post-trial briefs from the parties, including the court-appointed attorney for the minor child. On November 10, 2022, the St. Charles Parish trial court rendered judgment granting the adoption. The St. Charles Parish trial court concluded that M.A.'s consent to the adoption was not required because, pursuant to La. Ch.C. art. 1245(C)(2), he had failed to communicate or visit with A.A. for a period of six months without just cause. M.A. files this timely appeal, seeking review of the St. Charles Parish trial court's November 10, 2022 judgment granting the petition for intrafamily adoption of A.A.

### DISCUSSION

The petition for intrafamily adoption alleged that M.A.'s consent was not required under La. Ch.C. art. 1245(C) because M.A. failed either to pay court-ordered child support for a period in excess of six months or to visit, communicate, or attempt to communicate with A.A. after April 2021, apart from one visit over two days in May 2022. The trial court found that the petitioners met their burden of proving that M.A.'s consent was not required based on his failure to visit, communicate, or attempt to communicate with A.A. for a period of at least six months under La. Ch.C. art. 1245(C)(2) and that the adoption was in the best

interests of the child.[5]

On appellate review, M.A. raises four assignments of error. M.A. contends the trial court erred as a matter of law when it failed to grant his exception of no cause of action; the trial court erred in finding M.A. failed to attempt to communicate with his son; the trial court erred in finding there was no just cause for M.A.'s failure to communicate or visit with A.A.; and the trial court erred in finding it is in the best interests of A.A. to grant the adoption, thereby terminating M.A.'s rights as the biological father to A.A.

*Jurisdiction*

Before addressing M.A.'s assigned errors, we begin our analysis with a question we raise *sua sponte*: whether the 29th Judicial District Court of St. Charles Parish had subject matter jurisdiction to decide the merits of the petition for intrafamily adoption despite the fact that custody litigation was already pending in the 24th Judicial District Court of Jefferson Parish.

Subject matter jurisdiction addresses a court's authority to adjudicate the cause before it. *Boudreaux v. State, Dep't of Transp. & Dev.,* 01-1329 (La. 2/26/02), 815 So.2d 7, 13. "[T]he issue may be considered at any time, even by the court on its own motion, at any stage of the action." *Id.* Considering custody litigation was already pending in the Jefferson Parish proceedings at the time the petition for intrafamily adoption was filed in the St. Charles Parish proceedings, the trial court in the 29th Judicial District of St. Charles Parish lacked subject matter jurisdiction to address this case. *C.D.J. v. B.C.A.,* 11-378 (La. App. 3 Cir. 10/5/11), 74 So.3d 300, 301-02; *See also In re D.C.M.,* 13-0085 (La. App. 1 Cir. 6/11/13), 170 So.3d 165, 173, *writ denied,* 13-1669 (La. 7/17/13), 118 So.3d 1102. We explain our reasoning in greater detail below.

---

[5] The trial court found petitioners failed to carry their burden of proving that M.A. failed to pay child support for a period of six months without just cause under La. Ch.C. art. 1245(C)(1).

M.A. has maintained at all stages of the proceedings that the threshold consideration for the court is whether the petition for intrafamily adoption may be considered where there is ongoing litigation involving custody pending in another Louisiana judicial district court, to which he contends the answer is no. In this case, while M.A. pled various exceptions objecting to the trial court's consideration of the petition for intrafamily adoption, M.A. did not file an exception of lack of subject matter jurisdiction. Nevertheless, "it is the duty of a court to examine subject matter jurisdiction *sua sponte*, even when the issue is not raised by the litigants." *Boudreaux*, 815 So.2d at 13.

"All objections which may be raised through the declinatory exception, except the court's lack of jurisdiction over the subject matter of the action, are waived unless pleaded therein." La. C.C.P. art. 925(C). "A challenge to a district court's lack of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it." *Bass P'ship v. Gravolet*, 12-0024 (La. App. 4 Cir. 11/21/12), 105 So.3d 224, 239, *writ denied*, 12-2741 (La. 3/1/13), 108 So.3d 1176 (citing *Tran v. Schwegmann's Giant Super Market*, 609 So.2d 887, 888-89 (La. App. 4th Cir. 1992). "It is a matter which may be raised at any time, even by the court on its own motion, at any stage of an action." *Id.*

The legal issue presented here: whether a court may consider a petition for intrafamily adoption where there is already litigation relating to custody pending in another court, has been addressed by two other circuits. In *C.D.J.*, the stepfather and biological mother petitioned for the intrafamily adoption of two children. *Id.*, 74 So.3d at 301. Their petition alleged that the biological father's consent was not required under La. Ch.C. art. 1245(C)(1) because the biological father had failed to pay court ordered child support for more than six months. *Id.* The biological father objected to the adoption and filed exceptions of no cause of action and prematurity based on the fact that there was no custody order in effect. *Id.* The trial court granted

the exceptions and dismissed the petition for intrafamily adoption. On appeal, the petitioners argued that the biological father's consent was not required because, pursuant to Article 1245, the biological mother was "otherwise lawfully exercising actual custody" and because the biological father failed to pay child support for six months. *Id.* The Third Circuit disagreed with the petitioners, finding that the case they relied upon in support of their contention, *In re Landry*, 97-867 (La. App. 3 Cir. 10/29/97), 702 So.2d 1092, was distinguishable from the current case because in the earlier *Landry* case, there had been no marriage between the mother and biological father such that the child was illegitimate *and* there was no pending custody dispute. *C.D.J.*, 74 So.3d at 302. The Third Circuit concluded, in *C.D.J.*, that "it was not the intent of the law for the provisions of [La. Ch.C. art. 1245] to apply to the case where there is on-going litigation related to custody." *Id.* The reviewing court, therefore, determined that the trial court was "legally correct" to dismiss the petition for intrafamily adoption on the biological father's exceptions of no cause of action and prematurity. *Id.* While the *C.D.J.* case arose in the context of exceptions of no cause of action and prematurity, both the Third Circuit's reasoning and the outcome of the case apply equally here.[6]

In *D.C.M.*, 170 So.3d at 173, the First Circuit was confronted with the same issue present in both *C.D.J.* and the instant case but in the context of an exception of lack of subject matter jurisdiction. In that case, the stepfather filed the petition for intrafamily adoption in St. Tammany Parish, and the biological father filed an exception of lack of subject matter jurisdiction because ongoing custody litigation was pending in another state. The stepfather responded to the exception, arguing that the jurisdictional provisions of the Uniform Child Custody Jurisdiction and

---

[6] An exception of no cause of action is triable and reviewable on the face of the petition alone. No evidence may be introduced to support or controvert the exception. *Clulee v. St. Pierre*, 13-881 (La. App. 5 Cir. 5/14/14), 142 So.3d 83. In its *C.D.J.* opinion, the Third Circuit did not detail the specifics of the petition before it. We are left to assume that the *C.D.J.* petition recited the existence of the custody litigation pending before another court. As discussed herein, in this case we decline to address whether the petition before us in this case, within its four corners, stated a cause of action.

Enforcement Act, La. R.S. 13:1801 *et seq.* ("UCCJEA") do not apply to adoptions, and therefore, his petition for adoption could be heard in Louisiana. On appeal, however, the First Circuit reasoned that the purpose of the UCCJEA is to avoid interstate custody disputes, and found, like the Third Circuit in *C.D.J.*, that La. Ch.C. art. 1245 did not apply where there was an ongoing custody dispute. Agreeing with the trial court, the First Circuit held that the termination of parental rights is the ultimate custody determination. Addressing Louisiana's concern for consistency in custody disputes, the First Circuit explained:

> Louisiana will not allow its laws to be used to circumvent the orders of another state and terminate the parental rights of a biological parent when a court with continuing jurisdiction with regard to custody has refused to do so. The petitioner cannot use the adoption exclusion to thwart the entire spirit and purpose of the UCCJEA, which was to avoid interstate custody disputes.

*Id.* at 173. The First Circuit affirmed the trial court's ruling that sustained the exception of lack of subject matter jurisdiction and dismissed the petition. In doing so, the First Circuit relied on *C.D.J.* and determined that although jurisdiction was not addressed in *C.D.J.*, it remained instructive as to the intent of the law and the application of La. Ch.C. art. 1245.

While the issue raised in both earlier cases was approached via different procedural avenues, the underlying principle unifying them is the recognition that, in instances where custody-related litigation is pending, the court presiding over that litigation, and no other, has the exclusive authority to hear and adjudicate the petition for intrafamily adoption.[7] This holding underscores the public policy determinations recognized by both the First and Third Circuits that forum-shopping should be minimized in proceedings that involve the custody of a child because at the center of these proceedings, the question is what is in the best interests of the child. We

---

[7] The varying procedural approaches taken to address the application of La. Ch.C. art. 1245 in previous cases, coupled with the lack of guidance in selecting the appropriate path for raising the issue, have contributed to the apparent confusion encountered in the present matter, which has resulted in the procedural quagmire we find this case in—an issue we address later in this opinion.

agree with the First and Third Circuits that "it was not the intent of the law for the provisions of [La. Ch.C. art. 1245] to apply where there is on-going litigation relating to custody." *C.D.J.*, 74 So.3d at 302.

Comparatively, *D.C.M.* involved a conflict between courts of different states, whereas this case involves conflict between courts of different parishes. However, the underlying basis for dismissing the petition for intrafamily adoption in *D.C.M.* and *C.D.J.* is the same as M.A. asserts here. As the court in *D.C.M.* pointed out, "[i]f you could simply move to another state and apply to adopt a child, effectively terminating the parental rights that are at issue in the other state, there would [be] no restriction—...it would undercut the validity of any judgment of custody issued by a court of competent jurisdiction." *D.C.M.*, 170 So.3d at 171. The same holds true in circumstances, like the present, where a petitioner moves to another parish within the State of Louisiana and applies to adopt a child.

Issues that involve the operation of matters within the state are generally declarations of venue. Still, the concerns raised in *D.C.M.* relating to interstate jurisdiction, including the potential for forum-shopping and conflicting decrees, are the same that plague intrastate custody disputes, as seen in the present matter. Consequently, while *D.C.M.* concerns interstate jurisdiction and is factually distinguishable in that regard, we find this case should be approached in the same manner. Furthermore, we find the foundational concepts of jurisdiction and venue support us doing so.

Venue is defined as "the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." La. C.C.P. art. 41. Jurisdiction is the "legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1. "Thus, venue refers to the place where the action is to be brought and adjudicated, while jurisdiction relates to the legal

power or authority of a court to adjudicate and decide the matter and to render judgment against a party to that action." *Tillis v. McNeil*, 17-673 (La. App. 5 Cir. 5/30/18), 249 So.3d 303, 307. Unlike venue, subject matter jurisdiction is "unrelated to the place where the action must be filed. Subject matter jurisdiction is the legal power and authority of a court to hear and determine a particular class of actions or *proceedings based upon the object of the demand*, the amount in dispute, or the value of the right asserted." *Id.* at 308 (emphasis added). In other words, "subject matter jurisdiction relates to *substantive matters pertaining to rights, duties and obligations*, while venue is a procedural matter unrelated to substantive causes of action." *Id*. (emphasis added). "The chief concern of the venue articles is to provide a convenient place for trials," whereas subject matter jurisdiction is essential to a court's authority to adjudicate a matter. *J & L Indus., L.L.C. v. Reeves*, 31,742 (La. App. 2 Cir. 1/7/99), 723 So.2d 541, 545. A petition seeking the intrafamily adoption of a child without the consent of the biological parent for failure to pay child support and/or for failure to visit, communicate, or attempt to communicate, and thereby terminating all parental rights, directly impacts the substantive rights, duties, and obligations of the biological parent, who opposes the intrafamily adoption.

Here, the trial court in the St. Charles Parish proceedings may have otherwise enjoyed subject matter jurisdiction over the petition for intrafamily adoption, however, evidence presented shows that litigation regarding the custody of A.A. was already initiated, and pending, in the Jefferson Parish proceedings. We agree with the First and Third Circuits that it is not the intent of our laws for the provisions of La. Ch.C. art. 1245 to apply where there is ongoing custody litigation. *C.D.J.*, 74 So.3d at 302. Since matters of custody and intrafamily adoption necessarily involve a parent's rights, duties, and obligations pertaining to the care and custody of a child, a court lacks the legal authority to consider a petition for intrafamily adoption where there is ongoing custody litigation pending elsewhere. Thus, despite the petitioners

initiating proceedings in the 29th Judicial District, jurisdiction remained with the 24th Judicial District where the initial custody determination had been made and M.A.'s petition for modification of custody remained pending.

As mentioned, counsel for M.A. raised several exceptions, objecting to the trial court's consideration of the petition for intrafamily adoption; however, an exception of lack of subject matter jurisdiction was not one of them. Nevertheless, "it is the duty of a court to examine subject matter jurisdiction *sua sponte*, even when the issue is not raised by the litigants." *Boudreaux*, 815 So.2d at 13. Accordingly, on this Court's own motion, we find the trial court lacked subject matter jurisdiction to consider the merits and render judgment on the petition for intrafamily adoption based on La. Ch.C. art. 1245, where ongoing litigation relating to custody was pending in another parish. "[W]hen a court lacks subject matter jurisdiction, it lacks the ability to pass judgment on an action, and a judgment by a court that lacks subject matter jurisdiction is void with respect to an action it has no power to entertain." *A Fuselier Bonding Serv., Inc. v. Perez*, 10-1416 (La. App. 3 Cir. 4/6/11), 62 So.3d 296, 302. The St. Charles Parish trial court did not have subject matter jurisdiction to render judgment on the petition for intrafamily adoption of A.A., and therefore, its November 10, 2022 judgment is void and must be vacated.

*Procedural Quagmire*

Our determination that the trial court lacked subject matter jurisdiction renders M.A.'s remaining assignments of error moot. Nevertheless, we briefly address the procedural context in which this case arrives before us and how that procedural posture bears upon our ability to answer the pivotal question: whether a court has the authority to assess the merits of an intrafamily adoption amid ongoing litigation in another parish.

In response to the petition for intrafamily adoption, M.A. filed exceptions of lis pendens, no cause of action, prematurity, and improper venue; however, on

appeal, M.A. assigns as error only the trial court's ruling on the exception of no cause of action. While the holding in *C.D.J.* forms the premise of M.A.'s argument on appeal for reversing the trial court's denial of the exception of no cause of action, counsel for M.A. did not raise the ongoing custody litigation issue or reference the holding in *C.D.J.* on the exception of no cause of action before the trial court.[8] Additionally, while the pending Jefferson Parish custody case formed the factual basis for his exceptions of improper venue, lis pendens, and, in argument only, prematurity, M.A. specifically cited *C.D.J.* only in support of his exception of improper venue.[9] Consequently, while M.A. appeals the denial of the exception of no cause of action, the record before us indicates that M.A. actually complains of the trial court's denial of his exception of improper venue. Considering the procedural history and current posture of this case, along with the apparent shift in M.A.'s argumentative approach to addressing the seminal issue on appeal, as well as the various procedural avenues taken in previous cases to tackle this precise issue, there appears to be confusion as to the proper procedural vehicle for arguing the dismissal of a petition for intrafamily adoption where custody-related litigation is pending.

Despite M.A.'s experimental approach, procedurally, to contest the intrafamily adoption petition, we need not engage in a lengthy analysis to assess the effectiveness of the procedural devices M.A. has employed, or not employed.

---

[8] In support of his exception of no cause of action, in brief and at the September 29, 2022 hearing, M.A. made only a conclusory assertion that the petition failed to set forth allegations that would entitle petitioners to an intrafamily adoption. In reference to the exception of no cause of action, and before allowing counsel for M.A. to address the other exceptions, the trial court asked, "[w]hat are [the petitioners] missing." Counsel for M.A. responded, "I would say that its maybe…the time frame of when they're alleging the child support was not paid and that the father has not seen the child." Counsel for M.A. then moved on to his argument in support of the exception of prematurity.

[9] We make the distinction between the factual basis and the legal grounds for M.A.'s exceptions. While the pending Jefferson Parish proceedings formed the *factual* basis for M.A.'s exceptions of improper venue, lis pendens, and prematurity, only M.A.'s exception of improper venue relied on *C.D.J.* as its *legal* basis for dismissal of the petition for intrafamily adoption. The legal basis in support of the exceptions of lis pendens and prematurity relied on the law relevant to those exceptions. *See* La. C.C.P. art. 531 ("Suits Pending in Louisiana Court or Courts") and La. C.C.P. art. 423 ("Implied Right to Enforce Obligation; Prematurity").

Instead, because we find *sua sponte*, as outlined above, the trial court lacked subject matter jurisdiction, we pretermit discussion of M.A.'s specific assignments of error.

### *CONCLUSION*

Based on the record before us, evidence demonstrates that litigation regarding the custody of A.A. was already initiated, and pending, in the Jefferson Parish proceedings at the time the petitioners filed for intrafamily adoption in St. Charles Parish. Louisiana jurisprudence holds that it is not the intent of our laws for the provisions of La. Ch.C. art. 1245 to apply where there is ongoing custody litigation. *C.D.J.*, 74 So.3d at 301; *D.C.M.*, 170 So.3d at 171. Additionally, matters of custody and adoption involve a parent's substantive rights, obligations, and duties relating to the care and custody of a child. Therefore, a court lacks the legal authority to act on a petition for intrafamily adoption where there is ongoing custody litigation in another jurisdiction. In this case, despite the petitioners initiating proceedings in the 29th Judicial District, jurisdiction remained with the 24th Judicial District where the initial custody determination had been made and M.A.'s petition for modification of custody was pending.

While M.A. raised several exceptions in this matter, an exception of lack of subject matter jurisdiction was not one of them. Nevertheless, the court has a duty to examine subject matter jurisdiction *sua sponte*, even when the issue is not raised by the litigants. Accordingly, on the Court's own motion, we find the trial court lacked subject matter jurisdiction to consider and render judgment on the merits of the petition for intrafamily adoption pursuant to La. Ch.C. art. 1245, where ongoing litigation relating to custody was pending in another parish. Therefore, we find the trial court's November 10, 2022 judgment is void and must be vacated.

In that we find subject matter jurisdiction lacking in this case, requiring that the trial court's judgment be vacated, we pretermit discussion of M.A.'s remaining assignments of error.

***DECREE***

Considering the record before us and the reasons expressed herein, the November 10, 2022 judgment granting intrafamily adoption of A.A. is vacated as void.

**JUDGMENT VACATED AS VOID**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MAY 24, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 23-CA-45

### E-NOTIFIED

29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
MIGUEL A. ELIAS (APPELLANT)          OMAR OCEGUERA, JR. (APPELLANT)          PAULA J. FERREIRA (APPELLANT)
NATALIE N. ENTERKIN (APPELLEE)

### MAILED

BETSY A. FISCHER (APPELLEE)
MAURA T. KARAYANE (APPELLEE)
TAYLOR S. MARTIN (APPELLEE)
ATTORNEYS AT LAW
2309 NORTH HULLEN STREET
METAIRIE, LA 70001

ATOUNDRA P. LAWSON (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 369
LULING, LA 70070

SAMANTHA M. SPITALE (APPELLEE)
ATTORNEY AT LAW
3636 SOUTH I-10 SERVICE ROAD WEST
SUITE 216
METAIRIE, LA 70001

ADAM M. KLOCK (APPELLANT)
DONALD A. MAU (APPELLANT)
GRAHAM BRIAN (APPELLANT)
RASHIM J. KHAN (APPELLANT)
ROBERT D. BANKS (APPELLANT)
ROBERT E. DUHON (APPELLANT)
ATTORNEYS AT LAW
4224 WILLIAMS BOULEVARD
KENNER, LA 70065