HIGGINBOTHAM, J.
LThe plaintiffs in this case are the surviving minor children of Stephen Dale Jackson.[1] They challenge a district court’s judgment that granted a partial summary judgment in favor of one of the defendants, the State of Louisiana through the LSU Health Sciences Center, Health Care Services Division — Earl K. Long Medical Center (hereafter referred to as “EKL Medical Center”), and dismissed their claims for wrongful death arising from alleged medical malpractice. Finding a lack of subject matter jurisdiction, we vacate the district court’s judgment and dismiss this appeal.
FACTS AND PROCEDURAL BACKGROUND
Stephen Dale Jackson was a 33-year-old inmate incarcerated and receiving medical services at the East Baton Rouge Parish Prison on April 15, 2007. That night, Jackson was transported to the emergency room at a state-operated medical facility, EKL Medical Center, for further medical treatment. Upon his arrival at EKL Medical Center, Jackson had complaints of a sore throat and fever lasting four-to-five days, and a history of left-sided facial numbness and peripheral vision loss that had been ongoing for several months. Jackson was awake, oriented, and cooperative during his examination at EKL Medical Center. While in the emergency room, Jackson received an oral pain medication and an antibiotic [4inj ection for strep pharyngitis, commonly known as strep throat. He also received a prescription for pain medication, as well as a prescription for a medication used to treat potentially-blocked arteries, after a CT imaging scan revealed a possible cerebral vascular accident, which is a medical term for stroke.[2] Additionally, Jackson underwent an EKG, which revealed a normal *393 sinus rhythm, and was ordered to return to the Radiology Department at EKL Medical Center on April 18, 2007, for an outpatient carotid Doppler ultrasound to follow up on what appeared to be a stroke.[3] Jackson was discharged from EKL Medical Center shortly after midnight (then April 16, 2007) and was transported back to the prison.
Jackson experienced a seizure and was found unresponsive at the prison on the evening of April 16, 2007. Those in charge of Jackson’s medical treatment at the prison decided to have Jackson transported back to EKL Medical Center. While in route to EKL Medical Center, Jackson suffered another seizure and cardiopulmonary arrest. When he arrived at EKL Medical Center, Jackson was evaluated and then admitted into intensive care, where he was treated for severe anoxic brain injury (a massive stroke). Because Jackson remained in a permanent catatonic and vegetative state, he was moved to a long-term care facility on May 23, 2007, where he stayed until his death almost three years later, on March 13, 2010.
Jackson’s surviving children were substituted as the proper party plaintiffs in Jackson’s suit that was initially filed solely in Jackson’s name in the 19th Judicial | ¡¡District Court on April 15, 2008. The plaintiffs asserted a claim for damages arising from alleged medical malpractice related to Jackson’s treatment at both the prison and EKL Medical Center on April 15-16, 2007. The plaintiffs’ original and amended petitions allege negligence and substandard medical care by the employees and staff of EKL Medical Center, the Emergency Medical Services, Inc. (EMS) medics, and staff at the prison, the staff and employees of the Sheriffs Office responsible for operating the prison, and vicarious liability on the part of East Baton Rouge Parish and the City of Baton Rouge for the prison operations, all of which contributed to Jackson’s alleged wrongful death. However, the plaintiffs’ pleadings make no reference to, nor contain any allegations concerning, Jackson’s compliance with or exhaustion of administrative remedies prior to filing suit. The record before us does not reflect that any of the named plaintiffs (Jackson, his court-appointed curatrix, or the natural tutrix on behalf of his minor children) ever sought review of Jackson’s medical malpractice claim either within the prison’s administrative review process or before a state medical review panel.[4]
Shortly after Jackson’s suit was filed and in response to the lawsuit, EKL Medical Center filed a dilatory exception on the grounds of prematurity on June 30, 2008. EKL Medical Center asserted that Jackson’s suit was premature, because he had failed to exhaust all of his administrative remedies prior to filing suit in the district court, as required by La. R.S. 15:1171 and 1172. The prematurity exception was scheduled for hearing on August 25, 2008, but the record does not reflect that the hearing ever took place. Further, the record does not contain any ruling on the exception, and it is devoid of any evidence or ] ¡¡allegations in any pleadings that Jackson complied with or exhausted the statutorily-required administrative remedy procedure prior to filing *394 his medical malpractice suit for damages. Additionally, at oral argument before this court, counsel for the plaintiffs and EKL Medical Center revealed that they had jointly agreed that the administrative remedy procedure and medical review panel process were unnecessary in this case due to an uncertainty in the law at that time. Counsel for EKL Medical Center indicated that the exception of prematurity was withdrawn before the district court made a ruling.
Over two years later, after the plaintiffs filed a third supplemental and amending petition, EKL Medical Center filed a motion for summary judgment on November 15, 2010. In support of its motion, EKL Medical Center filed an affidavit of an expert in the field of emergency medicine, Dr. Juliette M. Saussy. In her affidavit, Dr. Saussy opined that Jackson’s emergency room treatment at EKL Medical Center did not constitute a breach of the emergency medicine standard of care in this case. Thus, EKL Medical Center based its motion on the plaintiffs’ failure to produce a medical expert who would establish a breach of the emergency medicine standard of care that was provided in Jackson’s treatment. The plaintiffs opposed the motion, relying on deposition testimony of an expert in cardiology, Dr. Carl S. Luikart, and moving for the district court to strike EKL Medical Center’s expert’s affidavit for procedural defects. However, EKL Medical Center maintained it was entitled to summary judgment as a matter of law, because Dr. Luikart refused to opine that EKL Medical Center had breached the emergency medicine standard of care while treating Jackson. Because in his deposition testimony, Dr. Lui-kart deferred to an emergency medicine specialist for establishing the medical standard of care for emergency rooms, EKL Medical |7Center argued that the plaintiffs could not meet their burden of proving medical malpractice.
Four days prior to the hearing on EKL Medical Center’s motion for summary judgment, the plaintiffs filed a supplemental memorandum in opposition, along with a supporting affidavit of another purported expert in emergency medicine, Dr. Angie Ragas, who would testify that EKL Medical Center’s emergency department breached the emergency medicine standard of care when Jackson was not admitted into the hospital to be monitored for neurological changes. However, citing mandatory district court rules, the district court did not allow the plaintiffs’ untimely affidavit. Additionally, by finding that the plaintiffs lacked expert testimony regarding any breach of the emergency medicine standard of care, the district court granted EKL Medical Center’s motion for summary judgment and dismissed the plaintiffs’ claims against EKL Medical Center. The plaintiffs appealed.
DISCUSSION
As in any case before this court, the first issue to be considered is whether the case is properly before the court and whether there is a basis for jurisdiction. We have a duty to examine subject matter jurisdiction sua sponte, even when the issue is not raised by the litigants. State ex rel. K.S., 2007-1045 (La.App. 1st Cir.11/2/07), 977 So.2d 35, 39; Swanson v. Department of Public Safety and Corrections, 2001-1066 (La.App. 1st Cir.6/21/02), 837 So.2d 634, 636. Upon review of the record before us, we conclude that the district court had no subject matter jurisdiction to render judgment in this case. Thus, for the reasons set forth more fully below, the district court judgment is vacated. Accordingly, we do not | sreach the merits of the plaintiffs’ appeal of the sum *395 mary judgment granted in favor of EKL Medical Center.
As we previously noted in the procedural background of this case, EKL Medical Center filed a dilatory exception of prematurity two years before it answered the plaintiffs’ amended petitions and asserted its motion for summary judgment.[5] However, the record is devoid of any district court ruling on the exception of prematurity. EKL Medical Center based its prematurity objection on the failure of the plaintiffs to pursue and exhaust all administrative remedies prior to filing suit in the district court. The record does not contain any evidence or allegations that the plaintiffs initiated, complied with, or exhausted any statutorily-required administrative remedy procedure prior to filing suit in the district court.[6]
At all relevant times hereto, La. R.S. 40:1299.39.1(A)(l)(a)[7] provided, in pertinent part, as follows:
All malpractice claims against the state, its agencies, or other persons covered by this Part, other than claims wherein the patients are prisoners ... shall be reviewed by a state medical review panel established as provided in this Section, to be administered by the commissioner of administration, hereinafter referred to as commissioner. (Emphasis added.)
IsAlthough the plain language of La. R.S. 40:1299.39.1(A)(l)(a) exempts prisoners with medical malpractice claims from the medical review panel process, this does not mean that prisoners are completely exempt from administrative review in the realm of medical malpractice claims. Walker v. Appurao, 2009-0821 (La.App. 1st Cir.10/23/09), 29 So.3d 575, 576, writ denied, 2009-2822 (La.3/5/10), 28 So.3d 1010. Rather, La. R.S. 40:1299.39(E)(1), prior to its amendment by 2010 La. Acts, No. 398, § 1, clearly states that the medical malpractice claims of prisoners against a state health care provider arising under the Malpractice Liability for State Services Act (MLSSA), “shall be submitted to correctional administrative review procedures established for administrative hearings in the correctional environment or established in accordance with express law, including [the Corrections Administrative Remedy Procedure (CARP) found at La.] R.S. 15:1171 et seq., [La.] R.S. 49:964, and the administrative rules and regulations pertaining thereto.” (Emphasis added.) Walker, 29 So.3d at 577.[8]
*396 Pursuant to the amended portions of CARP by 2002 La. Acts, No. 89 § 2, effective April 18, 2002, and effective at all pertinent times to this litigation, prisoners are required to initiate administrative remedies for delictual actions — including claims for medical malpractice against a state health care provider — |withinin ninety days of the date of injury or damage.[9] See La. R.S. 15:1172(B)(1); Walker, 29 So.3d at 577 n. 2. If initiation of the administrative remedy is untimely, the delictual claim is considered abandoned and any subsequent suit asserting such a. claim shall be dismissed with prejudice. La. R.S. 15:1172(C); Walker, 29 So.3d at 577 n. 2. It is only after an administrative decision regarding a delictual action is rendered that the prisoner or his representatives have the right to file the prisoner’s claim as an original civil action in the appropriate district court. See Walker, 29 So.3d at 577; Cf. Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713, 717 (provisions of La. R.S. 15:1171, et seq. declared unconstitutional, because the legislative act divested district courts of original jurisdiction in civil matters:) see also La. R.S. 40:1299.39(E)(1); La. R.S. 15:1177(0.
EKL Medical Center’s previously-filed objection of prematurity essentially challenged the district court’s subject matter jurisdiction. See Larrieu v. Wal-Mart Stores, Inc., 2003-0600 (La.App. 1st Cir.2/23/04), 872 So.2d 1157, 1162. When we questioned counsel for both parties at oral argument about the lack of a district court ruling on the exception of prematurity, both counsel indicated that the exception had been withdrawn because the parties had decided that it was not necessary to pursue an administrative remedy or a medical review panel decision in this case. However, where the law provides for an administrative remedy, a claim must be processed through the administrative channels before a district court will have subject matter jurisdiction to entertain the claim. Id. Furthermore, the ^objection of lack of subject matter jurisdiction may not be waived by the parties and may be raised by the court sua sponte. Id. at 1162-63.
Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La. C.C.P. art. 1. Jurisdiction over the subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties or waived by the parties; a judgment rendered by a *397 court that has no jurisdiction over the subject matter of the action or proceeding is void. See La. C.C.P. arts. 3 and 925(C). The issue of subject matter jurisdiction addresses the court’s authority to adjudicate the cause before it; the issue may be considered at any time, even by the court on its own motion, at any stage of an action. Boudreaux v. State, Dept. of Transp. and Development, 2001-1329 (La.2/26/02), 815 So.2d 7, 12-13; Dickens v. Louisiana Correctional Institute for Women, 2011-0176 (La.App. 1st Cir.9/14/11), 77 So.3d 70, 73.
CONCLUSION
We conclude that the record is devoid of any evidence of the statutorily-required administrative review procedure, thereby revealing that the plaintiffs failed to exhaust Jackson’s administrative remedies prior to filing suit in the district court. Therefore, the district court lacked subject matter jurisdiction to consider this medical malpractice claim. See Walker, 29 So.3d at 577. The partial summary judgment signed by the district court on June 13, 2011, is void and has no legal effect. Thus, this court must vacate the district court’s judgment |12for lack of subject matter jurisdiction. See Swanson, 837 So.2d at 637. For these same reasons, this court does not have subject matter jurisdiction to hear this case, and this appeal must be dismissed. See Swanson, 837 So.2d at 637.
Appeal costs in the amount of $7,118.00 are equally assessed to the plaintiffs and the State of Louisiana through the LSU Health Sciences Center, Health Care Services Division — Earl K. Long Medical Center.
JUDGMENT VACATED; APPEAL DISMISSED.

. This suit commenced on April 15, 2008, with Stephen Dale Jackson named as the sole plaintiff. Subsequently, due to the interdiction of Jackson on September 17, 2008, his mother, Shirley Richardson, was substituted as party plaintiff, in her capacity as the court-appointed curatrix of Jackson. After Jackson died on March 13, 2010, his surviving minor children, Crimson Jackson, Alexander Jackson, and Aunjanue Jackson, were substituted as the proper party plaintiffs, with their mother, Michelle Bowman, designated as the natural tutrix on behalf of Jackson's minor children. Throughout the opinion, we will refer to Jackson’s surviving minor children as the plaintiffs, and sometimes we will reference Jackson himself or the court-appointed cura-trix as Jackson’s representative.

. The CT scan revealed a sub-acute or chronic occipital infarct in the right occipital region, and follow up was recommended "as clinically indicated.” The record contains several medical descriptions for what is commonly referred to as a stroke, including sub-acute or chronic occipital infarct and cerebral vascular accident.

. The record reflects that the ultrasound was initially scheduled for April 18, 2007, although an attempt was made to change the appointment to April 16, 2007. The appointment was ultimately rescheduled for 8:00 a.m. on April 17, 2007.

. During the May 23, 2011 hearing on EKL Medical Center’s motion for summary judgment and in oral argument before this court, counsel for the plaintiffs acknowledged that this case did not go before a state medical review panel.

. The record reflects that the Sheriff's Office defendant also filed a similar exception of prematurity on August 6, 2008. While the plaintiffs' claims against the Sheriff’s Office are not relevant to this appeal, we note that the record does not contain any ruling on that exception either.

. There is also no indication in the record that the plaintiffs submitted their wrongful death and survival actions to a state medical review panel, as would now be required by the amended version of La. R.S. 40:1299.39(E)(1). See 2010 La. Acts, No. 398, § 1.

. Louisiana Revised Statutes 40:1299.39.1(A)(1)(a) was amended by 2010 La. Acts, No. 398, § 1, when the legislature substituted “subject to administrative review in a correctional facility in accordance with [La.] R.S. 40:1299.39(E)’’ for “wherein the patients are prisoners^]” However, the pertinent statutory version for this case is that which was in effect as of the time Jackson's cause of action for medical malpractice arose in 2007. See Dailey v. Travis, 2004-0744 (La.1/19/05), 892 So.2d 17, 20.

.We note that the 2010 amendment to La. R.S. 40:1299.39(E)(1) now requires that all medical malpractice claims of prisoners relating to health care rendered in a correctional facility and arising under the MLSSA be submitted for correctional administrative review procedures, and all other medical malpractice claims under the MLSSA, including wrongful death and survival actions related to prison *396 ers, be submitted to a medical review panel. See 2010 La. Acts, No. 398, § 1. While the plaintiffs' medical malpractice claims in this case relate to Jackson’s health care treatment rendered at the prison and at the state-operated medical facility, the 2010 amendment is not applicable to Jackson's claim, which arose in 2007. As previously noted, the pertinent statutory provision is that which was in effect at the time the cause of action arose. See Dailey, 892 So.2d at 20.

. Section 325 of Title 22, Part I of the Louisiana Administrative Code, outlines the rules and procedures to be followed in formally addressing inmate complaints in adult institutions in Louisiana. As of April 20, 2002, the Code requires inmates to use the procedure set forth therein, the two-step Administrative Remedy Procedure (ARP), before they can proceed with a suit in federal or state court. LAC 22:I.325(A)(1); Dickens v. Louisiana Correctional Institute for Women, 2011-0176 (La.App. 1st Cir.9/14/11), 77 So.3d 70, 74. The two-step ARP applies to an inmate's complaints of personal injury. LAC 22:I.325(B).