# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-213


LOUISIANA DEP'T. OF HEALTH AND HOSPITALS,
OFFICE OF PUBLIC HEALTH

**VERSUS**

**SHEMAN BERNARD**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20175240
HONORABLE LAURIE A. HULIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JOHN E. CONERY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**

**Sheman Bernard**
**1224 Carmel Drive**
**Lafayette, Louisiana  70501**
**PRO SE DEFENDANT/APPELLANT:**
      **Sheman Bernard**

**Neal Risley Elliott, Jr.**
**Bureau of Legal Services**
**Department of Health and Hospitals**
**Post Office Box 3836**
**Baton Rouge, Louisiana  70802**
**(225) 342-1128**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Louisiana Department of Health and Hospitals, Office of Public Health**

**Alice O. Landry**
**Attorney at Law**
**825 Kaliste Saloom Road  # 102**
**Lafayette, Louisiana  70508**
**(337) 262-1573**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Louisiana Department of Health and Hospitals, Office of Public Health**
      **Dr. Juliette Stefanski, authority for Region IV Office of Public Health**

**CONERY, Judge.**

In this case, the trial court granted a permanent injunction against defendant Sheman Bernard, enjoining her from any contact with the employees of the Louisiana Department of Health and Hospitals Office of Public Health, Sanitation Services in Baton Rouge, Louisiana (hereinafter "LDH-OPH"), or any employee of the Region IV Office of Public Health, Sanitation Services, located in the Clifton Chenier Complex in Lafayette, Louisiana (hereinafter "Region IV") except as provided in the judgment. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

The issues between Ms. Bernard and the LDH-OPH, the state entity with direct supervision over Region IV, have been ongoing since 2012. In 2012, Ms. Bernard and her husband, Timothy Bernard, entered Region IV offices with a video camera seeking a "file" for their address at 1224 Carmel Drive, Lafayette, La. 70501. The Bernards were told no such file existed.

On September 11, 2017, a "PETITION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION," was filed against Ms. Bernard on behalf of the LDH-OPH and Region IV. The petition was verified by Dr. Juliette "Tina" Stefanski, M.D. in her capacity as the Appointing Authority on behalf of Region IV Office of Public Health in the LDH. The LDH-OPH submitted several exhibits in support of the petition which will be discussed below.

First, an August 8, 2014 letter from Tiffany Sonnier, of Region IV, to Ms. Bernard indicated that on July 21, 2014, two representatives of Region IV attempted to inspect the Bernard property. The inspection was the result of a

complaint received in the Lafayette Parish Health Unit. However, the two representatives were not allowed on the property by the owner.

On November 6, 2014, T.J. Lane, Assistant Secretary of the LDH-OPH, wrote to Ms. Bernard addressing her "inquiry and concerns" regarding a "water main leak and the abandoning of the water main" near the Bernard property by Lafayette Utilities System (LUS). The letter explained that an inspection had been conducted to determine how to repair a leaking water main on Ovey Street, near the Bernards' property. According to the November 6, 2014 letter, LUS determined that since the water main was leaking, and no customers were being serviced by that water main, they had abandoned the line located between Carmel Drive and Fred Street. Therefore, the leak had no impact on the Bernard property.

The November 6, 2014 letter further stated that LUS had contacted Region IV in Lafayette on October 10, 2014, to advise that a crew had been sent to the area to put dirt in the hole created by the leak and to clean up the area. In closing, the letter stated that Mr. Lane hoped the work done in the area was to the satisfaction of Ms. Bernard. The correspondence also contained contact information for Ms. Bernard to use if she had any questions about the LUS operations in the area.

On May 6, 2015, Mr. Lane of the LDH-OPH once again wrote to Ms. Bernard based on her "inquiry and concerns regarding a septic system" on her property. The letter indicated that Mr. Chris Soileau, LDH-OPH District Engineer in Lafayette, La., had conducted a site visit on November 20, 2014 and could not identify any sewage discharge or water leaks in the area. Additionally, on March 27, 2015, Ms. Jennifer Kihlken, LDH-OPH District Engineer, contacted Mr. Mike Rhodes with LUS, who stated that he was unaware of a septic system existing on the property. LUS, through Mr. Rhodes, responded that "the property is serviced

2

through a service line to the LUS municipal sewer system. LUS had previously investigated the sewer lines for leaks by conducting a dye test in the area and found no issues." Mr. Lane's letter also advised Ms. Bernard that the family should contact a "Septic Tank Service" to determine if anything was present on the property and to help "with detection and abandonment." Mr. Lane's letter clearly stated that everything that could be done had been done by LDH-OPH and LUS to remedy the problem, and that the Bernards should enlist a private "Septic Tank Service" should they feel further assistance was needed.

On February 27, 2015 and March 16, 2015, Mr. and Ms. Bernard, Ms. Bionca Joseph, and Ms. Evelyn Bernard filed suit against several public entities, including the LDH-OPH and LUS, claiming, among other things, fraud and wrongful death. Both petitions were attached as exhibits to LDH-OPH's September 2017 petition for a permanent injunction against Ms. Bernard. A panel of this court heard the appeal of the consolidated suits in *Bernard v. Lafayette City Police Dept.*, 16-361, 16-362 (La.App. 3 Cir. 11/16/16), (unpublished opinion), *writ denied*, 16-2253 (La. 2/3/17), 215 So.3d 691.

Although the panel found the facts "exceedingly difficult to determine," the portion of the case dealing with LUS and LDH-OPH (referred to as "DHH" in the lawsuit) involved the attempt by the work crew dispatched by LUS to fill the hole created by the leak in October 2014. Apparently, the LUS crew was accompanied by the Lafayette City Police Department (LPD). Mr. Bernard and his daughter, Bionca Joseph, actively protested the presence of the LPD, LUS, and any equipment on their property, and were arrested for "battery on a police officer, criminal mischief, and resisting arrest." The panel ultimately affirmed the trial

court's dismissal of the Bernards' claims against LUS and LDH-OPH on procedural grounds.[1]

### *Procedural Posture Of The Plaintiff's Petition*

In response to the petition filed by LDH-OPH, the trial court initially signed a Temporary Restraining Order (TRO) on September 11, 2017, and the hearing on the petition was fixed for October 16, 2017. A continuance was granted on October 18, 2017, re-fixing the hearing on the petition to November 27, 2017.

The hearing on the petition of LDH-OPH and Region IV for a permanent injunction against Ms. Bernard was ultimately held as scheduled on November 27, 2017 with counsel for LDH-OPH present, along with Ms. Bernard representing herself pro se. Ms. Bernard initially objected to the proceedings based on a case allegedly filed in federal court and stated that she did not intend to participate based on her Fifth Amendment rights. However, the trial court determined that the case in federal court had no relationship to LDH-OPH's request for a permanent injunction against Ms. Bernard, and the hearing proceeded as scheduled.

LDH-OPH called as its first witness Mr. Albert J. Mancuso, Jr., who is the program administrator for LDH-OPH retail food program, the on-site wastewater program, and the buildings and permits program. Mr. Mancuso testified that he oversaw the administration of these programs for LDH-OPH and had two

---

[1] This was not the first suit brought by the Bernards concerning the condition of their property. In *Bernard v. Lafayette-City Parish Consol. Gov't,* 12-1341 (La.App. 3 Cir. 4/10/13) (unpublished opinion), *writ denied*, 13-971 (La. 6/14/13), 118 So. 3d 1088, a panel of this court affirmed the dismissal of both LUS and LDH-OPH on procedural grounds based on the Bernard's refusal to submit to the jurisdiction of the trial court. When the plaintiffs were informed that the trial court would have to dismiss their claim, both Ms. Bernard and Mr. Bernard agreed. Mr. Bernard then replied "[T]hat's what we are asking you to do." Accordingly, the trial court dismissed their case with prejudice.

individuals that he reported to in the administration, Ms. Carolyn Bombet, his direct supervisor, and Mr. Mike Vidrine, her superior. Mr. Mancuso's duties included the direct supervision of six individuals within his office, who in turn supervised the nine regional sanitarians. Indirectly, Mr. Mancuso has supervisory control over about two hundred and fifty employees across the State.

Mr. Mancuso testified that his involvement with Ms. Bernard began in July of 2017. He had no prior knowledge of any of the previous events. He spoke with Ms. Bernard on his business telephone, then he forwarded her complaint to the regional sanitarian, who was responsible for forwarding the complaint on to the local parish health unit.

From that point on, Mr. Mancuso began to receive what he termed "a pattern of calls every day." Mr. Mancuso testified that he received sixteen documented voicemails between July 19, 2017 and August 16, 2017. He further testified to additional calls that he did not document. Mr. Mancuso testified he found it increasingly more difficult to do his assigned job when "every day you have the same call and there's nothing that – nothing new or nothing has changed. There's nothing that was done."

In the face of increasing difficulty in his daily work, he sought the assistance of his boss, Mr. Vidrine. He told him, "We're getting calls all the time. I don't know what to do with this. It's already been taken care of. I thought it was all done. There is nothing else we can do." Mr. Vidrine agreed and referred the matter to counsel for LDH-OPH.

Mr. Mancuso also testified that he had referred Ms. Bernard to someone in her region for assistance, and suggested she go through her parish health unit, but

she continued to contact him, although she never came to his office. At trial, Ms. Bernard refused her opportunity to cross-examine Mr. Mancuso.

LDH-OPH then called Ms. Susan Trahan, the sanitarian parish manager for Lafayette Parish. Ms. Trahan oversees the same areas as Mr. Mancuso does for the State and has direct supervision of six employees. Ms. Trahan testified to specific encounters with Ms. Bernard, which included the 2012 visit to her office in which Ms. Bernard entered with a video camera, seeking a file for her address pertaining to an old sewer system on her property at 1224 Carmel Drive. Ms. Bernard was told at that time that there were no records on file for that address.

Ms. Trahan testified that she had traveled to Ms. Bernard's property in 2014, along with an inspector, to investigate the complaint and the property. However, neither Ms. Trahan nor the inspector was allowed on the property by Ms. Bernard's husband.

Ms. Trahan further testified that in late June of 2017, Ms. Bernard began calling the office and talking to both Ms. Trahan and different inspectors. Ms. Trahan testified that since then, she had received recorded voice messages on the following dates: July 12th, July 27th, July 28th, August 4th, August 8th, August 11th, August 14th, and August 15th. Ms. Trahan testified that she had not received any calls from Ms. Bernard since the TRO was signed by the trial court on September 11, 2017.

Ms. Trahan then contacted her regional director, who at the time was Ms. Vickie Collins, about the repeated calls and the effect they were having on her ability to do her work, as there was nothing to be resolved. Whereupon, Ms. Collins also contacted counsel for LDH-OPH.

Ms. Bernard questioned Ms. Trahan on cross-examination concerning the reasons she came to the property in 2014, as she stated in 2012 that there were no records on file. Ms. Trahan responded that the inspection in 2014 was in response to a complaint phoned into the Baton Rouge office. The record does document that there was a problem at the property in 2014.

LDH-OPH rested its case. Ms. Bernard submitted no evidence in the record, and stated, "I told you what I had. I don't have any evidence to give to the Court, but I do have closing statements to speak on."

Closing statements began, and counsel for LDH-OPH asked the trial court to permanently enjoin Ms. Bernard from contacting the offices of Mr. Mancuso or Ms. Trahan. The trial court understood the request for the two offices, but further questioned counsel for LDH-OPH about the request that Ms. Bernard not be allowed to go within 200 feet of the Clifton Chenier Complex. Counsel expressed a concern that if Ms. Bernard was prevented from calling the offices in Baton Rouge and Region IV that she might begin making just as frequent in-person visits to the offices in question.

Ms. Bernard insisted that the initial problem had not been addressed and that both LDH-OPH and Region IV were keeping her from getting the information she needed to determine what was broken in her yard. However, documentation submitted in support of LDH-OPH's petition demonstrated that LDH-OPH did everything it could to assist Ms. Bernard in connection with her requests.

At the completion of closing arguments, the trial court stated:

YOUR HONOR: And I think that – I believe the testimony of Mr. Mancuso, when he said that there were times where he was on the phone for over an hour. Obviously, the repetitive phone calls as well as the repetitive voicemails were unreasonable.

7

They were not productive. They did not lead to a solution of the problem but rather led to the harassment and the disruption of the daily duties of Mr. Mancuso as well as Ms. Trahan.

Based on the foregoing, the trial court found in favor of LDH-OPH and granted the permanent injunction in part, enjoining Ms. Bernard from contacting by any means, including phone, mail, email or other electronic means, or threatening any employee of "the Office of Public Health, Sanitation Services in Baton Rouge, La., or any employee of the Region IV Office of Public Health, Sanitation Services at 220 W. Willow Street, Bldg. A. Lafayette, La."

However, the trial court denied the request of the LDH-OPH that Ms. Bernard be enjoined from coming within 200 feet of the Clifton Chenier Complex. The trial court further ordered that if Ms. Bernard had any "legitimate Office of Public Health issues," she could contact "Ms. Carolyn Bombet, RS | Chief Field Operations, office of Public Health, 628 N. 4th Street Bin 10 Box 9, Baton Rouge, LA 70802."

Ms. Bernard timely appealed the November 30, 2017 judgment reflecting the trial court's ruling.[2]

## ASSIGNMENTS OF ERROR

Ms. Bernard asserts the following errors on appeal:

1. The court [erred] in allowing preliminary hearing before [trial] of permanent injunction, also the court [erred] in failing to furnish peace bond or exhaust all legal remedies.

2. The court [erred] to Due Process proceedings.

3. The court and plaintiff failed to process serve the issuance of Temporary Restraining order, no signature of service was given or provided.

---

[2] LDH-OPH did not appeal the trial court's denial of the portion of the permanent injunction enjoining Ms. Bernard from coming within 200 feet of the Clifton Chenier Complex.

4. The court [erred] in ordering injunction, the affidavit did not prove harassing, assaulting, or threatening anyone of [its] staff or employee[s].

5. [V]iolations of ADA title II/III

## LAW AND DISCUSSION

### *Standard of Review*

The Louisiana Supreme Court in *Rand v. City of New Orleans*, 14-2506, p.4 (La. 6/30/15), 173 So.3d 1148, 1151 instructed that "[T]he issuance of a permanent injunction takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence." The trial court's ruling granting a permanent injunction will not be disturbed on appeal absent manifest error. *Mary Moe, L.L.C. v. Louisiana Bd. Of Ethics*, 03-2220 (La. 4/14/04), 875 So.2d 22.

### *Assignment of Error Three*

This court will first address the issue of service of the Temporary Restraining Order issued by the court, as it pertains to the trial court's ability to exercise its jurisdiction over Ms. Bernard. Ms. Bernard insisted at trial that she had not received service of the TRO. Ms. Bernard stated on the record, "I didn't know that I had a Temporary Restraining Order granted on me already. That wasn't process served to me, Your Honor." Counsel for LDH-OPH indicated that service of the TRO had been requested and a TRO dated September 13, 2017 is in the record addressed to Ms. Bernard. Ms. Bernard continued to insist she "didn't get anything."

The trial court then asked the minute clerk to check the service on Ms. Bernard, to which she replied, "personal service." The trial court then stated,

9

"[p]ersonal service, okay. All right. Well, the Clerk shows personal service, so – and that's what I have to go with." Further, Ms. Bernard appeared at the trial on the merits on November 27, 2017. The trial had previously been fixed for October 16, 2017. However, at the request of counsel for LDH-OPH, the trial was continued by the trial court to the November trial date. Therefore, Ms. Bernard's presence at the trial on the merits belies her assertion that she did not receive notice of the proceedings. Based on the record before us we find that Ms. Bernard's assignment of error three is without merit.

### *Assignment of Error Four*

Ms. Bernard argues the trial court erred in finding that her repeated calls to the offices of LDH-OPH in Baton Rouge and Lafayette were not supported by the "affidavit." In this case, the trial court held a full trial on the merits with both testimonial and documentary evidence, extensively discussed in this opinion. LDH-OPH did not simply rely on "affidavits" to support its case that Ms. Bernard's continued calls to the offices in Baton Rouge and Lafayette were impeding the employees from doing their duties.

The trial court found, based on the testimony and documentation submitted, that Ms. Bernard's actions warranted a permanent injunction against her contacting either office by any means. We find no manifest error in the trial court's ruling granting the permanent injunction in favor of LDH-OPH as stated in the November 30, 2017 judgment. Ms. Bernard's assignment of error four is also without merit.

### *Assignments of Error One and Five*

Having discussed and determined that the main assignments of error raised by Ms. Bernard are without merit, we now turn to her assignments of error one and five.

In Ms. Bernard's assignment of error one, she asserts that the trial court erred in continuing with the hearing as LDH-OPH failed "to furnish [a] "peacebond[sic]" and or to "exhaust all legal remedies." [3]   In assignment of error five, Ms. Bernard states that LDH-OPH committed "[V]iolations of ADA [T]itle II/III."

Ms. Bernard failed to cite in her brief any legal remedies that the LPH-OPH was required to exhaust before filing its petition for a permanent injunction, or any violations by LDH-OPH of the Americans With Disabilities Act, "ADA [T]itle II/III."  Ms. Bernard also failed to raise these issues with the trial court at the trial on the merits, and therefore we are precluded from considering them on appellate review.  *Boudreaux v. State Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7.

The bond required by La.Code Civ.P. art. 3610 was properly waived by the court pursuant to La.R.S. 13:4581, which provides that state agencies, such as LDH-OPH, "shall not be required to furnish any appeal bond or any other bond in any judicial proceedings instituted by or brought against them, that arise from activities within the scope and course of their duties and employment."  Therefore, the trial court properly waived the bond requirement of La.Code Civ.P art. 3610 as requested by LDH-OPH in their petition for a permanent injunction.  Thus, Ms. Bernard's assignments of error one and five are also without merit.

*Assignment of Error Two*

In assignment of error two, Ms. Bernard claims she did not receive "Due Process Proceedings."  Ms. Bernard was present at the proceedings, had the

---

[3] The term "peacebond" used by Ms. Bernard is misplaced in this context, as it refers to a term from the La.Code Crim.P. art. 26, *et seq.*  The bond which applies in this instance is the one required in La.Code Civ.P. art. 3610.

opportunity to cross-examine the witnesses for LDH-OPH, and had the option to submit evidence in opposition to both the testimonial and documentary evidence submitted to the trial court by LDH-OPH. Therefore, she received the process due all litigants. Accordingly, Ms. Bernard's assignment of error two is without merit.

Further, we find that the trial court was sensitive to Ms. Bernard's pro se status and her claimed disability. The trial court allowed her to fully state her case. However, the record clearly supported the claim by LDH-OPH that everything that could be done had been done by the Office of Sanitation in both Lafayette and Baton Rouge to assist Ms. Bernard with her alleged problem. We therefore affirm the trial court's judgment of November 30, 2017 in its entirety.

## CONCLUSION

For the foregoing reasons, the trial court's November 30, 2017 judgment in favor of Louisiana Department of Health and Hospitals Office of Public Health, Sanitation Services is affirmed in its entirety. All costs of this appeal are cast against Sheman Bernard.

**AFFIRMED.**