SUCCESSION OF EDNA B. COTAYA

C/W

SUCCESSION OF MILTON E. COTAYA, JR

NO. 24-CA-228  C/W
24-CA-227

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 838-243 C/W 838-251, DIVISION "J"
HONORABLE STEPHEN C. GREFER, JUDGE PRESIDING

December 26, 2024

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Stephen J. Windhorst, and Timothy S. Marcel

<u>**AFFIRMED**</u>
    **SJW**
    **MEJ**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR INTERVENOR/APPELLANT,
VICKI TOSH

    James A. Harry
    William R. Penton, III
    Cesar R. Burgos
    Robert J. Daigre
    George M. McGregor

COUNSEL FOR PLAINTIFF/APPELLEE,
LEE COTAYA, INDIVIDUALLY AND AS SUCCESSION REPRESENTATIVE
OF EDNA B. COTAYA

    J. Douglas Sunseri

**WINDHORST, J.**

Appellant, the succession representative, Vicki Tosh, appeals the trial court's November 12, 2023 judgment (1) denying her motion to traverse; and (2) adopting the Amended Sworn Descriptive List and Amended Final Tableau of Distribution filed by the Special Master. For the following reasons, we affirm.

**PROCEDURAL HISTORY and FACTS**

Because of the contentious and litigious nature of these succession proceedings, the following facts and procedural history are relevant. Six children were born of the marriage of Milton and Edna Cotaya: Milton E. Cotaya, III ("Skip"), Terrence M. Cotaya, Sr., Cathy Cotaya Huber, Lee Cotaya, Vicki Cotaya Tosh, and Trudi Cotaya Blackwood. Milton and Edna each executed a Last Will and Testament on August 30, 2000. On October 11, 2010, they each executed a codicil to their respective wills. In the codicils, subject to a usufruct in favor of each other, Milton and Edna, respectively, (1) left any and all interest in Fasteners, Inc., ("Fasteners") including voting and non-voting shares owned by each, to all of their children, except Skip,[1] in equal shares; and (2) left the remainder of all property to their children, except Skip, "in equal shares." However, on May 26, 2012, Milton and Edna donated their 70% interest in Fasteners ("Fasteners' stock") to Lee.[2] The parties have been embroiled in several contentious litigation proceedings, including the present succession proceedings, since this donation.

### *Interdiction proceeding and nullification proceeding*

On October 2, 2012, Vicki instituted interdiction proceedings in the 24th Judicial District Court (hereafter "JDC"), No. 719-653, <u>Interdiction of Milton E. Cotaya, Jr. and Edna B. Cotaya</u>, seeking the full interdiction of her parents, Milton and Edna Cotaya. Albert "Joey" Richard was appointed the financial curator for

---

[1] Skip is not a part of any of the proceedings as he was intentionally omitted from Milton and Edna's wills.

[2] Prior to this donation, Milton and Edna owned a 70% shareholder interest in Fasteners.

Milton and Edna.[3] By judgment dated December 23, 2013, Milton and Edna (also referred to as "the interdicts") were placed under full interdiction. The trial court appointed William C. Credo, III as their curator, and because Vicki was the primary caregiver of the interdicts, she was appointed as the undercurator. Vicki was subsequently removed for cause on September 14, 2014 as undercurator. On May 16, 2013, Vicki filed a petition for nullification in the interdiction proceeding, 24th JDC, docket no. 719-653.

On May 16, 2014, Vicki, Terrence, and Trudi filed a Petition for Nullification of Donation ("the nullification proceeding"), against Lee, Fasteners, and Credo, seeking to nullify the donation of the Fasteners' stock to Lee, in the 24th JDC, docket no. 738-534, Petition for Nullification of Donation (Milton E. Cotaya, Jr. and Edna B. Cotaya).[4] Credo, in his capacity as curator for Milton and Edna filed a motion to transfer the nullification proceeding to docket no. 719-653, the interdiction proceeding. The interdiction and nullification proceedings were subsequently consolidated. In December 2014, Credo resigned[5] as curator for the interdicts, and thereafter, the trial court appointed John Sudderth and Robert Grant as co-curators.

Trial on the merits of the petition for nullification of the donation to Lee was set on January 14 and 15, 2015. Prior to the conclusion of the trial, the parties[6] entered into a consent judgment wherein (1) defendants Lee and Fasteners agreed to pay $4,000.00 every month to Milton and Edna "as their deferred compensation," payable "no later than" the seventh day of each month until the death of both Milton and Edna; (2) defendant Fasteners agreed to pay $3,750.00 to Milton and Edna

---

[3] By judgment dated November 12, 2013, the trial court granted Richard further authority over the finances of Milton and Edna.

[4] The proceeding is also captioned Milton E. Cotaya, Jr., Edna B. Cotaya, Vicki Cotaya Tosh, Vicki Cotaya, Terrence Cotaya, Trudi Cotaya Blackwood, Trudi Cotaya v. Lee M. Cotaya, Fasteners Inc., William C. Credo.

[5] The record does not show when or why Credo resigned or was replaced with Sudderth and Grant as co-curators of the interdicts. In his brief to this court, Lee asserts that Credo resigned due to the litigation proceedings filed against him by Vicki and her failure to cooperate.

[6] The parties in the nullification proceeding were Vicki, Terrence, Trudi, Lee, Fasteners, and Sudderth and Grant, the co-curators for the interdicts, Milton and Edna.

pursuant to the lease agreement entered into by the parties on January 22, 1999, payable to Milton and Edna "no later than" the seventh day of each month, and the payments shall not cease prior to the death of both Milton and Edna; (3) "failure to pay monthly payments of $7,750.00 as ordered herein will result in the transfer of all stock in Fasteners" to Edna and Milton; (4) defendants Fasteners and Lee agreed to pay a lump sum of $5,000.00 to Milton and Edna, or to the survivor, within 90 days of the signing of the consent judgment; (5) Vicki and Trudi agreed to immediately withdraw their complaints against Lee's wife Jan Cotaya filed with the Accounting Board; (6) "all exceptions, motions, and claims presently pending in the above-entitled matters [docket nos. 738-534 c/w 719-653 interdiction and nullification proceedings] are hereby dismissed with prejudice, each party to bear their own costs"; (7) "any and all collateral and ancillary litigation, lawsuits, actions or pleadings presently pending in this or any other Court in the State of Louisiana by and against the parties, including but not limited to the following:" docket nos. 717-393, Lee M. Cotaya and Fasteners, Inc. v. Vicki Cotaya Tosh; 727-085, Edna B. Cotaya and Milton E. Cotaya, Jr. v. Lee Cotaya; and 727-885, Lee Cotaya and Fasteners, Inc. v. Vicki Cotaya Tosh, are dismissed with prejudice; (8) the court appointed curators, John Sudderth, Robert Grant and Albert "Joey" Richard, have full and independent authority to enter into any and all business transactions on behalf of Edna and now deceased, Milton, which they "agree are reasonable and in the best interest" of Edna and now deceased, Milton.

Fasteners and Lee filed a motion to enforce judgment, contempt of court and attorney's fees and costs against Vicki. On June 2, 2016, the trial court found Vicki in contempt and sentenced her to serve seven days in the Jefferson Parish Correctional Center but gave her five working days to purge herself of the contempt order by submitting specific documents listed in the judgment to the financial curator, Richard. The trial court also ordered Vicki to provide counsel for Lee

written proof that she withdrew her complaint against Lee's wife Jan filed with the CPA/Accounting Board. The trial court further awarded attorney's fees to Lee's counsel and the interdicts' counsels against Vicki.

### *Succession proceedings in the 22nd JDC in St. Tammany Parish*

On August 10, 2015, Milton Cotaya died. On December 2, 2015, Vicki instituted the first succession proceeding, the Succession of Milton E. Cotaya, Jr., in the 22nd JDC in St. Tammany Parish. In her verified "Petition for Probate of Notarial Testament and Confirmation of Independent Executrix," Vicki asserted that Milton "resided in" *and* was "domiciled in" St. Tammany Parish at the time of his death. Conversely, the attached affidavit of death, domicile and heirship asserted that Milton "resided in" St. Tammany Parish. Vicki was appointed executrix.

When Edna died on November 17, 2016, Lee filed the Succession of Edna B. Cotaya in the 22nd JDC in St. Tammany Parish. The Petition to Appoint a Notary to Search for Testament and for Appointment of Provisional Administrator and the attached affidavit of death, domicile and heirship asserted that Edna was "domiciled in" St. Tammany Parish. Thereafter, Vicki sought several times to be appointed the executrix of Edna's succession; however, Lee was subsequently appointed provisional administrator.

By consent judgment dated April 11, 2017, the Succession of Milton E. Cotaya and the Succession of Edna B. Cotaya were consolidated. On June 21, 2017, Lee's counsel filed a Proof of Claim in the succession proceedings alleging that Lee incurred attorney's fees in the amount of $66,188.38 in the interdiction proceeding (docket no. 719-653), due to the "improper fraudulent conduct and action of Executrix, Vicki Cotaya and was necessary to preserve the estates of Milton E. Cotaya, Jr. and Edna B. Cotaya." The record does not show that any opposition was filed as to Lee's proof of claim for attorney's fees.

On August 2, 2017, the parties entered into a consent judgment agreeing to the appointment of a Special Master "to provide findings of fact and recommendations for any and all claims by the legatees and/or heirs, as well as the administration, liquidation and closing" of the succession proceedings.[7] By consent judgment dated November 14, 2017, the parties appointed William Magee as the Special Master for the successions.

During the succession proceedings, the legatees Vicki, Terrence, and Trudi demanded collation of the Fasteners' stock donated to Lee, asserting that the Fasteners' stock was an asset of the estates. In August 2018, Lee filed a motion for partial summary judgment contending that the donation of the Fasteners' stock to Lee was not subject to collation because the legatees are not forced heirs and the donation occurred more than three years prior to the deaths of Milton and Edna. In response, the Special Master issued a report recommending that the trial court grant Lee's motion for partial summary judgment finding that (1) Louisiana law limits the right to demand collation to forced heirs and it is undisputed that there are no forced heirs in this case; and (2) the donation was made more than three years prior to the deaths of Milton and Edna. Consequently, the Special Master further found that the donation of the Fasteners' stock to Lee was not a part of the estates of Milton and Edna. Vicki, Terrence, and Trudi filed an objection to the Special Master's report. By judgment dated April 23, 2019, the trial court (1) adopted the Special Master's finding that the 70% shareholder interest in Fasteners (*i.e.*, the Fasteners' stock) donated to Lee is not part of the estates of Milton and Edna and not subject to collation; (2) denied and dismissed the objection to the Special Master's report filed by Vick, Terrence, and Trudi; (3) adopted the Special Master's recommendation to grant Lee's motion for partial summary judgment, finding that the 70% shareholder

---

[7] A written judgment was signed August 28, 2017.

interest in Fasteners (*i.e.*, the Fasteners' stock) donated to Lee is not subject to collation and is excluded as an asset of the estates of Milton and Edna.

Subsequently, Vicki, Terrence and Trudi filed a motion to dismiss Magee as the Special Master, which was granted by the trial court.[8] Lee filed a motion to appoint a successor Special Master pursuant to the August 2, 2017 consent judgment. The motion was opposed by Vicki, Terrence, and Trudi. After a contradictory hearing, the trial court granted Lee's motion and named Ronald "Chip" Morrison as Special Master.

On June 23, 2021, almost six years after she initially filed the first succession proceeding in St. Tammany Parish (*i.e.*, the <u>Succession of Milton E. Cotaya</u>) and after numerous unfavorable rulings, Vicki filed a Rule to Show Cause to Determine Jurisdiction against Lee and Fasteners, alleging that decedents Milton and Edna were domiciled in Jefferson before they were interdicted and they lacked capacity to change domicile after they were interdicted. As such, Vicki asserted that Milton and Edna were domiciled in Jefferson Parish at the time of their deaths and thus, the succession proceedings filed in St. Tammany Parish are absolutely null. Lee filed a Motion to Dismiss Challenge of Jurisdiction, Exception of No Cause of Action and Motion for Sanctions ("motion to dismiss"). Vicki filed an opposition and supplemental opposition to Lee's motion to dismiss, additionally arguing that the decedents were interdicted at time of death and therefore, the domicile of the interdicts was that of their curators, (i.e., all curators domiciled in Jefferson Parish, not St. Tammany Parish). On November 10, 2021, after a status conference, the parties withdrew their respective motions.

Lee then filed a Motion to Compel Final Participation in the Completion of the Special Master Proceeding ("motion to compel participation"). On August 25, 2022,

---

[8] The trial court granted the motion to dismiss Magee as Special Master due to Magee's temporary suspension from the practice of law.

after a contradictory hearing, the trial court (1) granted Lee's motion to compel participation; (2) ordered that all claims, demands, motions and memorandums in support of claims for reimbursement made against any party in the successions shall be filed within 45 days of August 25, 2022; (3) ordered that the Special Master shall file a proposed Final Tableau of Distribution within 90 days of August 25, 2022; and (4) set Vicki's exception of lack of subject matter jurisdiction for hearing.

On August 22, 2022, nine months after the withdrawal of her prior rule to determine jurisdiction, Vicki filed an exception of lack of subject matter jurisdiction only as to the Succession of Edna B. Cotaya, which was filed by Lee. Lee filed an opposition.

On December 9, 2022, the trial court (1) granted Vicki's exception of lack of subject matter jurisdiction; (2) denied Vicki's request to cast Lee with all costs and reasonable attorney's fees; (3) denied Vicki's "demand to dismiss the Successions of Milton E. Cotaya and Edna B. Cotaya and their underlying Judgments;" and (4) "in the interest of justice," ordered "the Succession of Milton E. Cotaya and the Succession of Edna B. Cotaya along with all underlying pleadings, deadlines, and orders" to be transferred to the 24th JDC pursuant to La. C.C.P. art. 932 B. Vicki did not contest, appeal, or collaterally attack any part of the trial court's December 9, 2022 judgment granting her exception of lack of subject matter jurisdiction and transferring Milton and Edna's succession proceedings to the 24th JDC pursuant to La. C.C.P. art. 932 B. Instead, two months later and while the transfer was pending, Vicki filed a new "Petition to Open Succession, Probate Will and Confirm Administrator," captioned Successions of Milton Cotaya and Edna Cotaya, docket no. 837-862 in the 24th JDC, seeking to confirm herself as administrator of both of her parents' successions.

When the proceedings were transferred from the 22nd JDC to the 24th JDC, they were unconsolidated and assigned to separate divisions in the 24th JDC. The

Succession of Edna B. Cotaya was assigned to Division "J," docket no. 838-243, and Succession of Milton E. Cotaya, Jr. was assigned to Division "F," docket no. 838-251. Lee filed a motion to consolidate 838-243 and 838-251 and a motion to adopt all underlying pleadings, orders, and judgments and to order the special master to set deadlines.

In response, Vicki filed a Petition to Dismiss, To Intervene, and to Strike Transferred Successions for Nullity ("motion to dismiss"), alleging for the first time that the transferred successions from the 22nd JDC were absolutely null. On April 11, 2023, the trial court rendered judgment (1) granting Lee's motion to consolidate 838-243 and 838-251[9]; (2) granting Lee's motion to adopt all underlying pleadings, orders and judgments from the proceedings in St. Tammany Parish; (3) ordering Ronald "Chip" Morrison to continue to serve as the Special Master for the consolidated successions and to set deadlines; and (4) denying Vicki's petition to dismiss.

Thereafter, on June 23, 2023, the Special Master filed a Proposed Sworn Descriptive List. The original descriptive list included payment of the proof of claim filed by Lee on June 16, 2017, for attorney's fees incurred in the interdiction proceeding, docket no. 738-534 c/w 719-653, payable to Lee and it did not include the Fasteners' stock as an asset of the estates of Milton and Edna.[10] The Special Master also filed a Recommendation for First and Final Tableau of Distribution, which recommended that the legatees (Vicki, Lee, Trudi, Terrence, and Cathy) split the remaining assets equally. The Special Master filed a notice of filing of the above. Vicki did not file an opposition to the first descriptive list and final tableau of distribution.

---

[9] The record contains a transfer order signed by the Division F judge transferring docket no. 838-251 to docket no. 838-243, Division J.

[10] This initial descriptive list was missing several values for assets of Milton and Edna that were in the possession of Vicki, to which the value was unknown.

On September 1, 2023, the Special Master issued an Amended Proposed Sworn Descriptive List ("Amended Sworn Descriptive List"), Amended First and Final Tableau of Distribution ("Amended Final Tableau of Distribution"), and notice of filing of the same. Vicki filed a Motion to Traverse on September 12, 2023. Vicki argued (1) that the donation of the Fasteners' stock to Lee was an advance on Lee's inheritance; (2) Lee's attorney's fees for interdiction proceeding cannot be paid by the estates; and (3) Lee should be removed as succession representative for Edna. Lee individually, and on behalf of the Succession of Edna B. Cotaya filed an opposition to the motion to traverse. After a contradictory hearing, the trial court denied Vicki's motion to traverse and adopted the Amended Sworn Descriptive List and Amended Final Tableau of Distribution.

This appeal followed.

**LAW and ANALYSIS**

On appeal, Vicki contends the trial court erred in denying her Motion to Traverse and in adopting the Amended Sworn Descriptive List and the Amended Final Tableau of Distribution filed by the Special Master because the Special Master was appointed by a court (*i.e.*, the 22nd JDC) which lacked subject matter jurisdiction to appoint a special master. Vicki also contends that the trial court erred in adopting the underlying pleadings, orders and judgments from the succession proceedings transferred from the 22nd JDC to the 24th JDC, including the order appointing a Special Master, because the 22nd JDC lacked subject matter jurisdiction over the succession proceedings. Vicki further argues that under La. C.C.P. art. 932B, only the lawsuit (*i.e.*, transfer of the action) can be transferred, not the proceedings (*i.e.*, underlying rulings and judgments) because the proceedings are absolutely null, and therefore, do not exist.

Alternatively, in the event the Special Master was properly appointed, Vicki contends the Amended Final Tableau of Distribution (1) should not have paid Lee a

portion of the estates of Milton and Edna because he received his inheritance in the donation of the Fasteners' stock, which was an advance on his inheritance; (2) should not have paid Lee's claim for attorney's fees for adverse legal work not related to the successions and a prior consent judgment provided that the parties were to bear their own costs, including attorney's fees; and (3) failed to list the Fasteners' stock as an asset of the successions of Milton and Edna. Accordingly, Vicki requests the Amended Final Tableau of Distribution to be stricken and requests Lee be removed as the succession representative of Edna's estate.

### *Subject Matter Jurisdiction*

Initially, this court must determine whether the trial court erred in adopting the underlying pleadings, orders and judgments from the succession proceedings transferred from the 22nd JDC to the 24th JDC, including the order appointing the Special Master.

Under the mandates of La. C.C.P. art. 2811, a proceeding to open a succession shall be brought in the trial court of the parish where the deceased was domiciled at the time of his death. The domicile of a natural person is the place of his habitual residence. La. C.C. art. 38. Furthermore, the domicile of a full interdict is that of the curator. La. C.C. art. 42.

Jurisdiction over subject matter is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted. La. C.C.P. art. 2. Subject matter jurisdiction addresses a court's authority to adjudicate the cause before it. Boudreaux v. State, Dept of Transp. & Dev., 01-11329 (La. 02/26/02), 815 So.2d 7, 13. Even when the issue is not raised by the litigants, the trial court has a duty to examine subject matter jurisdiction *sua sponte*. Id. "[T]he issue may be considered at any time, even by the court on its own motion, at any stage of the action." Id. A judgment rendered by a court which has no jurisdiction

over the subject matter of the action or proceeding is void. La. C.C.P. art. 3. Subject matter jurisdiction cannot be conferred by consent of the parties, nor can it be waived. Id.; Comeaux v. Louisiana Tax Commission, 20-1037 (La. 05/20/21), 320 So.3d 1083, 1091. Nevertheless, even though a judgment may be null, there are circumstances which preclude a court from declaring its nullity, particularly as provided in La. C.C.P. arts. 2002 and 2003. See also Official Revision Comment (b) to La. C.C.P. art. 3.

La. C.C.P. art. 2002 provides that a final judgment is an absolute nullity for a vice of form, if it is rendered under one of the following exclusive[11] grounds: (1) against an incompetent person not represented as required by law; (2) against a defendant who has not been served with process as required by law and who has not waived objection to jurisdiction, or against whom a valid default judgment has not been taken; or (3) *by a court which does not have jurisdiction over the subject matter of the suit*. See Anderson v. Anderson, 20-186 (La. App. 5 Cir. 12/23/20), 309 So.3d 868, 874. Except as otherwise provided in La. C.C.P. art. 2003, absolutely null judgments may be asserted at any time, in a direct or collateral proceeding, before any court, and are not subject to requirements of statutory action for nullity for fraud or ill practices. La. C.C.P. arts. 2002 B and 2003; State v. Ramos, 18-136 (La. App. 5 Cir. 12/27/18), 264 So.3d 564, 567; Champagne and Rodgers Realty Co., Inc. v. Guillot, 06-237 (La. App. 5 Cir. 11/14/06), 947 So.2d 39, 45, writ denied, 06-2920 (La. 3/9/07), 949 So.2d 440; Barnett Marine, Inc. v. Van Den Adel, 96-1029 (La. App. 5 Cir. 04/09/97), 694 So.2d 453, 457, writ denied, 97-1236 (La. 09/26/97), 701 So.2d 983. Thus, an absolutely null judgment may be collaterally attacked by procedural means short of a petition for nullity, such as a contradictory motion or rule. Zavala v. Dover Constr. USA, LLC, 17-1 (La. App. 1 Cir. 04/11/18), 249 So.3d

---

[11] See Cosse v. Orihuela, 12-456 (La. App. 5 Cir. 01/30/13), 109 So.3d 950, 955, writ denied, 13-680 (La. 04/26/13), 112 So.3d 850; See also Official Revision Comment (e) to La. C.C.P. art. 2002.

24, 29; Lexington Ins. Co. v. Tasch, Inc., 12-339 (La. App. 5 Cir. 11/27/12), 105 So.3d 950, 956.

However, an action for nullity is not a substitute for an appeal. Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692 (La. App. 1 Cir. 09/24/99), 754 So.2d 1057, 1060; La. C.C.P. art. 2002 A(3). Additionally, the grounds for absolutely null judgments as listed in La. C.C.P. art. 2002 cannot be raised by parties who voluntarily acquiesced in a judgment or were present in the parish at the time of the judgment's execution and did not attempt to enjoin its enforcement. La. C.C.P. art. 2003; See In re Succession of Wilkinson, 07-1038 (La. App. 5 Cir. 05/27/08), 986 So.2d 141, 145; Home Distribution, Inc., 754 So.2d at 1059.

In the instant case, even though Vicki's exception of lack of subject matter jurisdiction was directed only at Edna's succession proceedings filed by Lee in the 22nd JDC, the trial court had a duty to examine subject matter jurisdiction *sua sponte* as to Milton's succession proceeding as well.[12] In its judgment, the trial court granted Vicki's exception of lack of subject matter jurisdiction. However, in the interest of justice, the trial court transferred both succession proceedings to the 24th JDC. Upon review, we find it is undisputed that at the time, the succession proceedings for Milton *and* Edna were filed in the 22nd JDC in St. Tammany Parish, the decedents were fully interdicted and the court appointed curators were all domiciled in Jefferson Parish. As such, Milton and Edna's succession proceedings should have been filed in the 24th JDC in Jefferson Parish. Accordingly, we find the succession proceedings were improperly filed in the 22nd JDC and the trial court properly granted the exception of lack of subject matter jurisdiction.

---

[12] Because we do not have the transcript of the hearing on the exception of lack of jurisdiction, we assume the parties agreed to expand the pleading to include Milton's succession, and/or that the trial court *sua sponte* determined the jurisdiction issue as to Milton's succession as well. Regardless, this issue was not raised by or objected to by the appellant in this appeal.

Nevertheless, La. C.C.P. art. 932 B provides that if an action is brought in a court of improper jurisdiction, the court *may* transfer the action to a proper court in the interest of justice.[13] When a suit is filed in a court of improper jurisdiction, courts have generally permitted a transfer without discussion or ordered a remand for a determination of whether the interest of justice supports a transfer. See Alvarado v. Poche, 02-2 (La. App. 3 Cir. 06/05/02), 819 So.2d 1150, 1153; Starr v. Ackor, 482 So.2d 4 (La. App. 5 Cir. 1985). Thus, under La. C.C.P. art. 932 B, in the interest of justice, the 22nd JDC trial court had discretionary authority to transfer the succession proceedings, along with the underlying rulings, judgments, and orders, including the order appointing the Special Master, to the 24th JDC. Considering the interest of justice under La. C.C.P. art. 932 B and the lengthy, acrimonious, and contentious history of these succession proceedings, we find the trial court did not abuse its discretion in transferring the succession proceedings, as well as the underlying pleadings, orders and judgments, including the order appointing the Special Master, to the 24th JDC.

Moreover, we find Vicki voluntarily consented to or acquiesced in the appointment of a Special Master in 2017 (and entered into additional consent judgments) in the 22nd JDC succession proceedings. Further, she was present in the parish at the time of the judgment's execution and did not attempt to enjoin its enforcement (or enjoin enforcement of other numerous adverse judgments) until *after* the proceedings were transferred to the 24th JDC pursuant to La. C.C.P. art. 932 B upon the 22nd JDC trial court's judgment granting Vicki's exception of lack of subject matter jurisdiction. La. C.C.P. art. 2003; See also Succession of Wilkinson, 07-1038 (La. App. 5 Cir. 05/27/08), 986 So.2d 141, 145.

---

[13] With the passage of La. Acts 2023, No. 5, §§ 1 & 3 (effective August 1, 2023), the legislature deleted the objection of lack of subject matter jurisdiction from the objections raised through declinatory exception pursuant to La. C.C.P. art. 925, and added it to the list of objections raised through a peremptory exception found in La. C.C.P. art. 927. The exception of lack of subject matter jurisdiction was filed August 22, 2022 prior to this amendment, and the 22nd JDC's judgment sustaining the exception and transferring both Edna's and Milton's successions to the 24th JDC was on December 9, 2022. Therefore, we find that application of La. C.C.P. art. 932 B in this case was appropriate.

Accordingly, based on the records of these succession proceedings, we find that La. C.C.P. art. 2003 precludes Vicki from now alleging (1) that the original succession proceedings, and their underlying pleadings, orders and judgments (including the order appointing the Special Master) from the 22nd JDC are absolutely null and void; (2) that the 22nd JDC erred in transferring the same pursuant to La. C.C.P. art. 932 B; and (3) that the 24th JDC erred in adopting the same.

We therefore now consider Vicki's alternative assignments of error.

***Motion to Traverse and Special Master's recommendation for Final Tableau of Distribution***

Alternatively, in the event the Special Master was properly appointed, Vicki contends the Amended Final Tableau of Distribution (1) should not have paid any amount to Lee from the estates of Milton and Edna to Lee because he received an advance on his inheritance from the donation of Fasteners' stock; (2) should not have paid Lee's proof of claim for attorney's fees because the work performed occurred in adverse legal work not related to the successions and a prior consent judgment provided that the parties were to bear their own costs, which included attorney's fees; and (3) failed to list the Fasteners' stock as an asset of the estates of Milton and Edna Cotaya.

The descriptive list in a succession proceeding is accepted as *prima facie* proof of all matters shown therein, unless amended or traversed successfully. La. C.C.P. art. 3137. *Prima facie* evidence is defined as evidence sufficient to establish a given fact and which, if not rebutted or contradicted, will remain sufficient. Succession of Clark, 22-190 (La. App. 3 Cir. 11/23/22), 354 So.3d 116, 126. The burden is on the party filing a motion to traverse to show that the descriptive list is in error. Id.

After a contradictory hearing, the trial court has discretionary authority to adopt, modify, reject in whole or in part, receive further evidence, or recommit with

instructions the Special Master's Descriptive List and Final Tableau of Distribution under La. R.S. 13:4165.

In the instant case, after argument of counsel, the motion to traverse was submitted to the trial court. The following dialogue then occurred:

The Court:
So with respect to the motion to traverse itself and the merits thereof, the Court would take note of the arguments and statements of counsel of the mover. However, ***no evidence of any type has been produced, and no documents have been offered to be introduced in connection with the hearing, no witnesses were called in connection with the hearing.*** There's a lot of, "he said this when I had a phone conversation," and "no, he didn't, he actually said that," and "something took place in another courtroom, but not really." ***All the Court's left with is arguments of counsel. I don't find any of those to be sufficient to carry the burden of proof of the mover in this particular matter***, as evidence must be presented in order to convince the Court that the recommendations of the Special Master are incorrect in some fashion. I don't find any of the arguments themselves to be persuasive. So, for those reasons, the Court's going to deny the motion to traverse.

I'll note your objection to the Court's ruling, Mr. Harry. Other than that, I think the succession can move forward at this point.

Mr. Harry:
Your Honor, one more thing I need clarification on. Has the Court accepted the record as evidence on behalf of the mover?

The Court:
Nothing was offered into evidence, so I haven't accepted any evidence in connection with the motion to traverse. The record is what it is. It is part of the record. But nothing was actually moved into evidence, so I have not considered anything in that regard.

\*\*\*

Mr. Penton:
Your Honor, just to make sure the record's clear, we would like to offer, file and introduce the record for purposes of taking up an appeal, Your Honor, and make sure that it's clear what we have done so.

The Court:
So, on appeal, you can certainly designate portions of the records of the record that you would like the Court to consider on appeal. For purposes of the record, nothing was offered at the time of the hearing. The Court granted that opportunity to do so; nothing was offered. I will take your, I guess, post judgment request to offer the record into the evidence. If you really want to do that, Mr. Penton, I think that could be a rather costly thing, because it's $2 per page if you're really offering the record into evidence. If you want the Court to take judicial notice of the record, it may be a less expensive way of doing so, but you can handle it whatever way you want to do.

Mr. Penton:
> Yes, Your Honor, taking judicial notice, you're correct, would be the better option.

The Court:
> All right. So, certainly, ***the Court has considered the record that is part of this proceeding in makings its ruling here today***.

The trial court thus found that Vicki did not successfully traverse the Amended Sworn Descriptive List. Upon review of the record, we agree Vicki did not meet her burden. Additionally, after finding that Vicki did not submit *prima facie* evidence that the Amended Sworn Descriptive List by the Special Master was in error, the trial court had discretionary authority to adopt, modify, reject in whole or in part, receive further evidence, or recommit with instructions the Special Master's Amended Sworn Descriptive List and Amended Final Tableau of Distribution under La. R.S. 13:4165. Considering the record of these succession proceedings, we cannot say that the trial court abused its discretion in adopting in whole the Special Master's recommendations as to the Amended Sworn Descriptive List and Amended Final Tableau of Distribution.

**DECREE**

Accordingly, for the reasons stated herein, we affirm the trial court's November 12, 2023 judgment (1) denying Vicki's motion to traverse; and (2) adopting the Amended Sworn Descriptive List and Amended Final Tableau of Distribution filed by the Special Master.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 26, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 24-CA-228
**C/W 24-CA-227**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE STEPHEN C. GREFER (DISTRICT JUDGE)
GEORGE M. MCGREGOR (APPELLANT)     JAMES A. HARRY (APPELLANT)     ROBERT J. DAIGRE (APPELLANT)
J. DOUGLAS SUNSERI (APPELLEE)

**MAILED**
KATHRYN A. E. SUNSERI (APPELLEE)     CESAR R. BURGOS (APPELLANT)
ATTORNEY AT LAW                      LEILA M. BONILLA (APPELLANT)
3000 18TH STREET                     WILLIAM R. PENTON, III (APPELLANT)
METAIRIE, LA 70002                   ATTORNEYS AT LAW
                                     3535 CANAL STREET
                                     SUITE 200
                                     NEW ORLEANS, LA 70119